### WONG DIN v. UNITED STATES.

(Circuit Court of Appeals, Ninth District.   February 20, 1905.)

#### No. 1,097.

1. CONSPIRACY—INDICTMENT.

Where an indictment alleged that defendants feloniously conspired with divers other persons, whose names were to the grand jurors unknown, to willfully, etc., aid and abet the landing of unknown Chinese persons in the United States from certain vessels, the names of which were to the grand jurors unknown, from ports or places in the empire of China to the grand jurors unknown, etc., and that, to effect the object of such conspiracy, defendant W. D., whose true name was to the grand jurors unknown, did bribe one B., deputy sheriff, in charge of certain Chinese persons whose names were unknown, who had been sentenced to deportation, to cause certain other Chinese persons, whose names were to the grand jurors unknown, to be substituted therefor, etc., was not defective for failure to allege the detailed facts stated to be unknown.

2. SAME—TRIAL—EXAMINATION OF JURORS—DISCRETION.

In a prosecution for conspiracy, a severance having been granted as to defendant B., when the case was called for trial against the other de-

fendants, defendant D. obtained leave to plead guilty, whereupon defendant W. obtained leave to re-examine the jurors as to prejudice, by reason of D.'s change of plea, and one of the jurors, admitting prejudice, was excused. Thereafter, and before the 12 jurors had been selected, another defendant pleaded guilty, and defendant W. again requested leave to re-examine the jurors, which was denied. *Held,* that the denial of such application was not error; the court having cautioned the jury that the fact that defendant's codefendants had pleaded guilty could not be considered as against defendant W.

**8. SAME—CO-CONSPIRATORS—EVIDENCE.**

Where, in a prosecution for conspiracy, a severance was granted, the evidence of a co-conspirator is admissible for the government, in the absence of statute, and its credibility is for the jury.

In Error to the District Court of the United States for the Northern District of California.

The plaintiff in error, whose true name is alleged to be unknown, was jointly indicted with William F. Dasha, Thomas J. Dempsey, and Thomas T. Burnett for the crime of conspiracy, based upon section 5440 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 3676]. The indictment, among other things, alleged that said defendants on August 8, 1903, at the city and county of San Francisco, Cal., "did then and there wickedly, corruptly, unlawfully, and feloniously conspire, combine, confederate and agree together with divers other persons whose true names are to the grand jurors aforesaid unknown, to commit an offense against the United States; that is to say, to then and there wilfully, unlawfully, and knowingly aid and abet the landing in the United States, to wit, at the port of San Francisco, within the State and Northern District of California, from certain vessels the names of which are to the grand jurors aforesaid unknown, from divers ports and places in the Empire of China, the names of which said ports and places are to the grand jurors aforesaid unknown, the voyages of which said vessels from said ports and places had then and there terminated at said port of San Francisco, in the State and District aforesaid, of certain Chinese persons, subjects of the Emperor of China, whose names are to the grand jurors aforesaid unknown, and which said Chinese persons were not, nor was either of them, members of the classes of Chinese persons who were then and there permitted by the laws of the United States to enter and remain within the United States; and which said Chinese persons were then and there unlawfully in the United States."

The overt act in furtherance of said conspiracy is alleged as follows: "And that to effect the object of the said conspiracy, the said Wong Din, whose true name is to the grand jurors aforesaid unknown, as aforesaid, heretofore, to wit, on the eighth day of August, in the year of our Lord one thousand nine hundred and three, * * * did then and there unlawfully, wilfully, knowingly and feloniously pay and procure to be paid to the said Thomas T. Burnett, who was then and there a deputy sheriff of the city and county of San Francisco, State of California, assigned to duty at the county jail of the said city and county, in which said county jail certain Chinese persons, whose true names are to the grand jurors aforesaid unknown, were then and there confined, * * * the sum of one thousand dollars * * * for the purpose and with the intent on the part of him, the said Wong Din, * * * of inducing the said Thomas T. Burnett and the said William F. Dasha and the said Thomas J. Dempsey to substitute, and cause and procure to be substituted, * * * for and in the place and stead of five certain Chinese persons whose true names are to the grand jurors aforesaid unknown, who were then and there awaiting deportation as aforesaid, five certain Chinese persons other than and different from the Chinese persons who were then and there awaiting deportation to China as aforesaid, the true names of which said other and different Chinese persons are to the grand jurors aforesaid unknown."

A severance was granted as to defendant Thomas T. Burnett. The case came up for trial as against the other defendants on April 6, 1904, and,

after the impaneling of the jury, the defendant Dempsey asked for and obtained leave to withdraw his plea of not guilty, and to enter a plea of guilty. The plaintiff in error then asked and obtained leave to re-examine the jurors, in order to ascertain whether the change of plea by Dempsey would prejudice the jurors against him. One of the jurors, named Mohr, admitted that that fact so prejudiced him that he would be unable to give the plaintiff in error a fair and impartial trial, and this juror was then and there excused. The other 11 jurors each answered that the change of Dempsey's plea would not prejudice him against the defendant Wong Din. Thereafter, and before the 12 jurors had been selected, the defendant Dasha asked and obtained leave to change his plea of not guilty and enter a plea of guilty. This being done, the plaintiff in error asked leave to re-examine the 11 jurors as to whether or not the change of the plea by defendant Dasha would prejudice the case as against him. This request was refused, and an exception was taken to this refusal. The vacancy in the jury was then filled, and the trial proceeded, resulting in a verdict of guilty.

S. C. Wright, T. C. West, and Bert Schlesinger, for plaintiff in error.

Marshall B. Woodworth, U. S. Atty.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge, after making the foregoing statement, delivered the opinion of the court.

It is claimed that the indictment does not state facts sufficient to constitute any offense against the laws of the United States. It will be noticed from the indictment that the names of the Chinese persons whom it is alleged the plaintiff in error and his codefendants entered into a conspiracy to release are unknown, that the vessel from which they were to be landed is unknown, that the names of the Chinamen awaiting deportation from the county jail are unknown, and that the names of the Chinese persons to be substituted for and in place of the five Chinese persons awaiting deportation are unknown. It is contended that for these reasons the indictment is wholly insufficient.

Are these details essential to constitute the crime charged? Are they of a character that reaches the substance of the crime? No one questions the correctness of the principles for which the plaintiff in error contends—that the accused in the indictment must be "informed of the nature and cause of the accusations" against him, and that for this purpose all of the material facts and circumstances embraced in the definition of the offense must be stated. No essential of the crime can be omitted. The object of an indictment is to furnish the accused with such a description of the charge as will enable him to make his defense, to enable him to avail himself of his conviction or acquittal for protection against another prosecution for the same cause, and to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction. These general principles have been frequently announced by the Supreme Court. United States v. Simmons, 96 U. S. 360–362, 24 L. Ed. 819; United States v. Carll, 105 U. S. 611, 26 L. Ed. 1135; United States v. Britton, 108 U. S. 199, 2 Sup. Ct. 531, 27 L. Ed. 698; United States v. Hess, 124 U. S. 483–486, 8 Sup. Ct. 571, 31 L. Ed. 516; Pettibone v.

United States, 148 U. S. 197, 202, 13 Sup. Ct. 542, 37 L. Ed. 419; Blitz v. United States, 153 U. S. 308, 315, 14 Sup. Ct. 924, 38 L. Ed. 725.

The gist of the crime of conspiracy, as alleged in the indictment, is the unlawful combination and agreement between the parties named as defendants therein. In Pettibone v. United States, supra, the court said:

"A conspiracy is sufficiently described as a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means; and the rule is accepted, as laid down by Chief Justice Shaw in Commonwealth v. Hunt, 4 Metc. (Mass.) 111, 38 Am. Dec. 346, that, when the criminality of a conspiracy consists in an unlawful agreement of two or more persons to compass or promote some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment, while, if the criminality of the offense consists in the agreement to accomplish a purpose, not in itself criminal or unlawful, by criminal or unlawful means, the means must be set out."

The conspiracy in the present case was to accomplish an unlawful purpose, to wit, to aid and abet the landing in the United States of Chinese who were not, under the laws of the United States, entitled to land. The conspiracy was general in its nature. It applied to Chinese who were confined in the county jail, and was not limited to any particular person or persons, or to persons who came on any particular vessel, or from any certain port or place. These things, if unknown, could not be more clearly stated, and were not essential to make out the crime as alleged, and, as to the overt acts in carrying out the crime, were mere matters of evidence. We are of opinion that the indictment is sufficiently clear and certain upon all the essential points, and is sufficient to inform the plaintiff in error as to the nature of the accusation against him.

We are also of opinion that the court did not err in refusing to allow the plaintiff in error for the third time to re-examine the jurors. The 11 jurors on the second examination stated that the fact that one of the defendants on trial had changed his plea would not in any manner prejudice them against the plaintiff in error. The matter was within the discretion of the court. It is apparent from the record of the trial that the plaintiff was not prejudiced by this ruling. The jurors were properly cautioned in regard to this matter. The court charged the jury as follows:

"And I may say to you, gentlemen, that the fact that two of his codefendants have pleaded guilty to the charge contained in this indictment, in your hearing, cannot be taken as any evidence whatever against this defendant. You are to decide the case solely upon testimony to which you have listened, and base your verdict upon that alone, and not allow your minds to be in the least prejudiced by the fact that two of the defendants have pleaded guilty."

The testimony of Thomas T. Burnett, if competent, and believed by the jury to be true, was sufficient to justify the verdict of guilty found by the jury. But the plaintiff in error claims that the testimony of Burnett was wholly inadmissible; that "a conviction for conspiracy cannot be had on the uncorroborated testimony of the co-conspirators, nor can co-conspirators corroborate each other"—and cites United

States v. Logan (C. C.) 45 Fed. 873, in support of this proposition. That case is not sustained by the federal decisions.

In United States v. Sacia (D. C.) 2 Fed. 754, 758, Judge Nixon charged the jury that:

"The fact that a witness is a co-conspirator doubtless operates, and ought to operate, largely against the credibility of his testimony, but the jury ·is not bound to reject it on that account. · Whilst it would be unsafe, in ordinary cases, to convict any one upon the uncorroborated testimony of accomplices in the crime, the rule of law undoubtedly is that they are competent witnesses, and it is your duty to consider their evidence. You are to weigh it and scrutinize it with great care. You are to test its truth by inquiring into the probable motive which prompted it. You are to look into the testimony of other witnesses for corroborating facts. Where it is supported in material respects you are bound to credit it, but where· it is unsupported you are not to rely upon it, unless, after the exercise of extreme caution, it produces in your minds the most positive conviction of its truth."

See, also, to the same effect, United States v. Babcock, 3 Dill. 581, Fed. Cas. No. 14,487; United States v. Flemming (D. C.) 18 Fed. 907–916; United States v. Ybanez (C. C.) 53 Fed. 536, 540; United States v. Howell (D. C.) 56 Fed. 21–28; Wolfson v. United States, 101 Fed. 430–436, 41 C. C. A. 422.

In Benson v. United States, 146 U. S. 325–336, 13 Sup. Ct. 60, 36 L. Ed. 991, there is an extended discussion upon the point herein involved. There a severance was had between the case of Mary Rautzahn and that of Benson, on trial for murder. She, not having been tried, was called as a witness on behalf of the government against Benson, and it was claimed that Mary Rautzahn was not a competent wit-. ness against him. The court, among other things, said:

"The theory of the common law was to admit to the witness stand only those presumably honest, appreciating the sanctity of an oath, unaffected as a party by the result, and free from any of the temptations of interest. The courts were afraid to trust the intelligence of jurors. But the last fifty years have wrought a great change in these respects, and to-day the tendency is to enlarge the domain of competency, and to submit to the jury for their consideration as to the credibility of the witness those matters which heretofore were ruled sufficient to justify his exclusion. This change has been wrought partially by legislation and partially by judicial construction. * * * If there had been no severance, and the two defendants had been tried jointly, either would have been a competent witness for the defendants; and, though the testimony of the one bore against the other, it would none the less be competent. Commonwealth v. Brown, 130 Mass. 279. The statute, in terms, places no limitation on the scope of the testimony, for its language is, 'The person so charged shall at his own request, but not otherwise, be a competent witness.' His competency being thus established, the limits of examination are those which apply to all other witnesses. * * * If interest and being party to the record do not exclude a defendant on trial from the witness stand, upon what reasoning can a codefendant not on trial be adjudged incompetent? The conviction or acquittal of the former does not determine the guilt or innocence of the latter, and the judgment for or against the former will be no evidence on the subsequent trial of the latter. * * * We think the testimony of Mrs. Rautzahn was competent, and there was no error in its admission."

In 12 Cyc. 453, there is a reference to many state authorities which sustain the principles that, "in the absence of a statute, the credibility of an accomplice is for the jury," and that "no common-law rule forbids a conviction upon the uncorroborated testimony of an accomplice, if

his evidence satisfies the jury of the guilt of the accused beyond a reasonable doubt."

See, also, Underhill on Criminal Evidence, § 73; Hughes on Criminal Law, § 3172.

The judgment of the District Court is affirmed.