## HENDERSON v. UNITED STATES.*

Circuit Court of Appeals, Eighth Circuit.
May 23, 1927.

No. 7619.

1. **Criminal law** ⬾1170(1)—In prosecution for possessing counterfeit internal revenue strip stamps, exclusion of transcript of testimony of witness before commissioner, if error, held not prejudicial (Comp. St. § 6076).

In prosecution, under Act March 3, 1897, § 7 (Comp. St. § 6076), for unlawful possession of certain counterfeit internal revenue strip stamps, where defendant's counsel interrogated witness at length regarding testimony which he had given before United States commissioner, *held*, error, if any, in excluding transcript of all testimony given by witness before commissioner, was not prejudicial.

2. **Criminal law** ⬾508(4)—In prosecution for possessing counterfeit revenue stamps, admission of testimony of one jointly indicted with defendant, but not on trial, held not error (Comp. St. § 6076).

In prosecution, under Act March 3, 1897, § 7 (Comp. St. § 6076), for unlawful possession of counterfeit internal revenue strip stamps, one jointly indicted with defendant, but not on trial, *held* competent witness, and admission of his testimony not error.

3. **Internal revenue** ⬾47(4)—In prosecution for possessing counterfeit internal revenue stamps, admission in evidence of counterfeit stamp seized during search of premises of one jointly indicted with defendant held not error (Comp. St. § 6076).

In prosecution, under Act March 3, 1897, § 7 (Comp. St. § 6076), for unlawfully possessing

*Rehearing denied August 30, 1927.

counterfeit internal revenue strip stamps, admission in evidence of counterfeit whisky labels and strip stamps found during search of premises occupied by one jointly indicted with defendant, and with whom defendant had been engaged in business, *held* not error.

**4. Internal revenue ⊚⇒47(5)—Evidence held to sustain conviction for possessing counterfeit internal revenue strip stamps (Comp. St. § 6076).**

Evidence *held* to sustain conviction, under Act March 3, 1897, § 7 (Comp. St. § 6076), for unlawful possession of counterfeit internal revenue strip stamps.

**5. Criminal law ⊚⇒510—Uncorroborated testimony of accomplice will sustain conviction in federal courts.**

In federal courts a person may be convicted on the uncorroborated testimony of an accomplice.

In Error to the District Court of the United States for the Western District of Missouri; Merrill E. Otis, Judge.

William W. Henderson was convicted of unlawfully possessing counterfeit internal revenue strip stamps, and he brings error. Affirmed.

R. M. Sheppard, of Kansas City, Mo. (Bert S. Kimbrell, of Kansas City, Mo., on the brief), for plaintiff in error.

S. M. Carmean, Asst. U. S. Atty., of Kansas City, Mo. (Roscoe C. Patterson, U. S. Atty., of Kansas City, Mo., on the brief), for the United States.

Before BOOTH, Circuit Judge, and FARIS and DAVIS, District Judges.

BOOTH, Circuit Judge. This is a writ of error to a judgment of conviction of Henderson under the Act of March 3, 1897 (29 Stat. 626, 628, c. 379, § 7 [Comp. St. § 6076]), relating to unlawful possession or use of counterfeit internal revenue strip stamps.

The indictment contained three counts. The first charged that Theodore Schultze and Henderson, on or about the 1st of June, 1925, unlawfully and with intent to defraud the United States, had in their possession certain counterfeit strip stamps in the similitude of revenue engraved strip stamps authorized by Congress under the Act of March 3, 1897, well knowing the same to be counterfeit. The second count charged a sale to John F. Van Arsdale of some of said stamps, knowing them to be counterfeit. The third count charged a sale of some of said stamps to Frank Hammett, knowing them to be counterfeit. A copy of the alleged counterfeit stamps was set out at length. On the trial, a severance was granted on motion of de-

fendant Henderson. The second count was dismissed by the government.

There was evidence tending to show that, shortly prior to June 2, 1925, J. F. Van Arsdale, an agent of the Internal Revenue Department of the government, called upon Frank Hammett at his place of business in Kansas City, and sought to buy whisky strip stamps and labels. Negotiations were carried on, with the result that on the morning of June 2d, the agent left with Hammett $70 with which to procure the stamps and labels. Hammett had previously been advised by Henderson that Schultze could furnish such labels "complete." Hammett communicated with Schultze after receiving the $70, and during the same forenoon Schultze and Henderson brought the strip stamps and the labels to Hammett in a package. Thereupon Hammett paid Schultze $50. Schultze turned the money over to Henderson, who signed a receipt for it and handed it to Schultze. In the afternoon Van Arsdale called and received the package from Hammett. Shortly thereafter Hammett was arrested. Thereupon he made a statement which was used as the basis for a search warrant to search the business premises occupied by Schultze, and in which Henderson had an interest. The officers who made the search found on the premises whisky labels, order blanks, price lists, and strip stamps. These were produced on the trial and offered and received in evidence.

Schultze, called as a witness by the government, testified that Henderson had bought a considerable quantity of strip stamps and labels a short time before, and had stored them in the basement of another place of business occupied by Henderson; that, when Schultze received the order from Hammett, he went to this latter place of business and told Henderson that Hammett wanted to buy a book of labels and stamps; that Henderson told him to go down into the basement and get them, which he did; that he and Henderson then took them to Hammett and delivered them.

Henderson, testifying on his own behalf, denied taking any part in the transaction or having any knowledge of it. The jury found Henderson guilty on the first count; not guilty on the third count.

[1] One of the assignments of error relied upon relates to the exclusion of certain evidence theretofore given before a United States commissioner by Hammett, who was a witness for the government. On the trial Hammett testified that on the 2d of June, 1925, Henderson and Schultz came to the

place where he was working in Kansas City, Mo., and delivered a package of the strip stamps in question to him; that he paid $50 to Schultze; that Schultze handed the money to Henderson; and that Henderson wrote and signed a receipt for the same, and gave it to Schultze. On cross-examination, Hammett was asked whether in his testimony before the commissioner he had made any mention of Mr. Henderson being present, and he answered, "I believe that you will find that I answered that question 'Yes.'" He was asked whether, in giving his testimony before the commissioner, he testified that Henderson was present with Schultze at the time the package was delivered, and answered, "I am sure you will find it that way."

Later the witness was recalled for cross-examination, and counsel for defendant, having before him a transcript of the testimony given before the commissioner, examined the witness at length as to his testimony before the commissioner, reading into the record the questions and answers as they appeared in the transcript. Finally, counsel for defendant asked the witness the following question: "Now, I will ask you if at any time in your evidence before the commissioner you made any statement that Henderson and Schultze —or that Henderson was with Schultze when this package was brought up to the Kansas City Card Company." The witness answered, "No; because I answered the questions that were asked." In order to impeach the credibility of this witness, the transcript of his testimony before the commissioner was then offered in evidence. It was excluded, the court saying: "He has admitted every question and answer you have asked him about, so there is no reason for introducing the record." The following colloquy then occurred:

"Mr. Sheppard: I want to show by it that this witness, this other evidence that he has given, that there wasn't any mention or suggestion made that Henderson was there, or had anything to do with the delivery.

"The Court: He admitted that; said he wasn't asked about that.

"Mr. Sheppard: Very well."

Later in the trial the transcript was again offered and excluded. In C., M. & St. P. Ry. Co. v. Harrelson, 14 F.(2d) 893 (C. C. A. 8), a somewhat similar situation arose. It appeared that a witness, who was testifying on the trial, had previously given his testimony by deposition. The witness was asked whether he had made mention in his deposition of certain facts to which he now on the trial testified. His answer being equivocal, the deposition was offered for the purpose of impeachment. It was received. This was assigned as error. The court, in passing upon the question, condemned the practice of allowing the whole deposition to be introduced, holding that only such parts as bore on the particular point in question were proper to be admitted. The court held, however, that whether the whole or only a part should be introduced was discretionary with the trial judge, and that, as no prejudice was shown by the introduction of the whole, the error, if it existed, was not a reversible one.

In the case at bar, we think such portion of the transcript of the testimony taken before the commissioner as related to the particular matter out of which the question of impeachment arose might well have been admitted. However, counsel for defendant, as above stated, had made use of the transcript in cross-examining Hammett in reference to questions and answers contained therein, and this was carried on at length. There is included in the record the complete transcript of Hammett's testimony before the commissioner, which was offered in evidence on the trial, but refused. A comparison of the questions and answers in this transcript with the questions put by counsel to Hammett on the trial and his answers thereto shows that practically all of the relevant testimony of Hammett as given before the commissioner was thus brought out upon the trial and characterized as having been given before the commissioner. This being the case, we think the error, even if there was one, in refusing admittance of the transcript as a whole was cured. It is true that the testimony before the commissioner was thus gotten in piecemeal, instead of as a whole; but we think this was not of such importance as to require reversal.

[2] Another assignment of error relates to the admission of testimony by the defendant Schultze, who was one of the parties indicted, but who was not on trial. If he had been on trial, he could have taken the witness stand at his own request, under the Act of March 16, 1878 (20 Stat. 30, c. 37 [Comp. St. § 1465]). He took the stand in the instant case voluntarily, although he was not on trial. Under these circumstances, we think he was a competent witness. And so it has been decided. Benson v. United States, 146 U. S. 325, 13 S. Ct. 60, 36 L. Ed. 991; Wolfson v. United States (C. C. A.) 101 F. 430, certiorari denied 180 U. S. 637, 21 S. Ct. 919, 45 L. Ed. 710; Wong Din v. United States (C. C. A.) 135 F. 702.

[3] Another assignment of error challenges

the admission in evidence of the counterfeit whisky labels and strip stamps found during the search of the premises occupied by Schultze. There was evidence tending to show that Henderson was an occupant of the premises with Schultze; that he was interested in the business carried on; that he had a desk in one of the rooms; that some of the labels or stamps were found in his desk. We think, under all the circumstances, there was no error in admitting the stamps and labels found on the premises, as bearing on the knowledge and intent of Henderson. St. Clair v. United States, 12 F.(2d) 376 (C. C. A. 8).

[4, 5] Another assignment of error challenges the sufficiency of the evidence to support the verdict, on the ground that both Hammett and Schultze were accomplices, and that the testimony of neither could be taken to corroborate the other. Conceding, but without deciding, that Hammett might be considered an accomplice, yet it is settled in the federal courts that a person may be convicted on the uncorroborated testimony of an accomplice, if the jury finds the testimony true and sufficient. This was decided in the Caminetti Case, 242 U. S. 470, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

We find no error in the record sufficient to require a reversal. The judgment is affirmed.