**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James D. IRVING, Defendant-Appellant.**

**No. 12072.**

United States Court of Appeals
Seventh Circuit.

June 27, 1957.

Harry G. Fins, Alvin A. Turner, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Chicago, Ill., for appellee.

FINNEGAN, Circuit Judge.

Earlier this year we affirmed the judgment of conviction of Irving [United States v. Irving, 7 Cir., 1957, 241 F.2d 306, rehearing denied March 14, 1957, certiorari denied 77 S.Ct. 1283] who now applies for an order admitting him to bail pending his appeal from an order entered below denying his motion for a new trial on the ground of newly discovered evidence. The cause is here on the docketing of Irving's notice of appeal June 24, 1957 after the district judge, who rejected the motion for new trial, denied bail. He was the same judge who presided at Irving's trial.

During the course of our opinion (241 F.2d 306, 307) we said, *inter alia:* "A revenue agent was told by Irving, or his representative, that the 'bulge' in his expenses of about $150,000 * * * arose out of money given him by a Robert Mays to invest in a legitimate business. No receipts for that sum were produced or found and no claim has been

made against Irving by Mays' estate * * * ." Irving, in his current motion states "During the course of preparation for his trial, the affiant diligently attempted to locate two receipts whereby he acknowledged the receipt of a total of $150,000 in September 1951 from Robert Mays * * * ." Judgment on the jury's verdict was entered May 28, 1956. In his affidavit, submitted in support of his current application for bail, Irving states: "The affiant [Irving] did not know of the whereabouts of these receipts until Mr. Edward L. White telephoned him on September 12, 1956 to advise him that these receipts were found among other papers which belonged to Robert Mays and were placed in Mr. White's safe." The balance of this affidavit is devoted to an exposition of the circumstances concerning Mays' proposed investment in business with Irving and the death of Mays in January, 1952. Several other affidavits are also submitted along with this motion for admission to bail. One is by an attorney who in substance relates discussion of the proposed business venture with Mays and Irving, but this affidavit contains nothing corroborating the receipts, nor showing transfer of funds from Mays to Irving. The supervisor of the Division of Small Loans and Bail Bonds, Department of Insurance, State of Illinois has also provided an affidavit here. His is a highly generalized statement reflecting conferences with Mays and Irving, there being other persons present, regarding issuance of a small loans license. Again the affidavit is unsupporting on the matter of receipts or movement of moneys from Mays to Irving. These last two affidavits merely indicate that Irving and Mays contemplated the possibilities of a joint business venture.

Edward L. White, finder of the receipts, now urgently pressed on us by Irving, has also made an affidavit, tracing his own business activities and shifts of locations up to the time he called a representative of the Mosler Safe Company to drill open the safe, September 12, 1956, in which these receipts were found.

Among White's statements embodied in his affidavit are these:

"9. Sometime during the latter part of September 1951, Robert Mays made a usual visit at 5047–49 Indiana Avenue. After he left, the affiant noticed that Mr. Mays had left some papers on the desk. The affiant did not examine these papers but telephoned Mr. Mays, who asked the affiant to place them in the affiant's Mosler safe. The affiant complied with this request. Shortly thereafter, Robert Mays became ill, was hospitalized, and died in January 1952."

"12. On September 12, 1956, while the affiant was searching the contents of the safe for the title to the truck, he came upon the papers which Robert Mays had left in the office in the latter part of September 1951. The affiant examined these papers and among them found two receipts, both signed by James D. Irving. The first receipt, dated September 3, 1951, acknowledges the receipt of $50,000.00 'For Loan Co. From Robert Mays.' The second receipt, dated September 12, 1951, acknowledges the receipt by James D. Irving of $100,000.00 'From Robert Mays For Loan Co.'"

"13. This is the first time that the affiant knew of the nature of the papers left by Robert Mays in September 1951. After the death of Robert Mays in January 1952, the affiant was never contacted either by the widow or Arthur J. Wilson, the administrator of the estate of Robert Mays, relative to any personal effects of the deceased Robert Mays."

"14. The affiant notified James D. Irving the same day."

The indictment on which Irving was convicted is grounded on a violation of Internal Revenue Code of 1939, § 145(b), 26 U.S.C. § 145(b) for the calendar year *1952*. This was a net worth case and the government introduced as an exhibit the statement of Irving's assets and liabilities as of December 31, 1951 signed by

him. Our examination of the record filed in the first appeal discloses the following items listed on that statement: "Assets: Cash in bank, $1,189.50; Cash on hand: $13,000 * * * net worth as of December 31, 1951, is $16,489.50. * * *" There are some adjustments in the record, but these figures suffice here. A government witness testified during the trial that at the end of 1952 "There were assets of $225,103.13; liabilities of $5,-729.74, making a net worth of $219,773.-39."

The gist of Irving's claim for bail at this instant stage is shortly stated in this passage from his latest motion:

"At the time of the discovery of these documents (the two receipts), this cause was in the process of appeal and, under the provisions of Rule 33, the District Court could grant no relief until the appeal had been terminated on June 10, 1957. Appellant respectfully submits that the newly discovered evidence is material and if in his possession at the time of trial, could have very well resulted in a verdict of acquittal. This involved a net worth case and the inability of the Government to prove unreported income of $176,000 as alleged, but rather only $26,000, may have well caused a verdict of acquittal by the jury."

Of course the merits of Irving's motion for a new trial on the ground of newly discovered evidence is not now before me for decision. See e. g. United States v. Marachowsky, 7 Cir., 1954, 213 F.2d 235, 238. But his motion for bail and documents filed in support of it are all part of the backdrop against which I must apply liberalized Rule 46(a) (2) governing bail on review after July 9, 1956. Federal Rules of Criminal Procedure, 18 U.S.C.

I am denying bail because in my opinion Irving's present appeal is frivolous or taken for delay, probably both. It is frivolous in my considered judgment when the impact of his affidavit is fully appreciated. Irving knew the existence of the receipts on September 12, 1956.

From the docket entries in the office of the clerk of this court it appears that the first appeal was docketed August 20, 1956 and after an extension of time, Irving as defendant-appellant filed his brief and appendix on October 19, 1956. No move of any kind was made by defense counsel to apprise this court of the receipts which Irving, on his own sworn statement, now tells me he was aware of in September, 1956. Significantly, I think, Irving's then defense attorney waived oral arguments in the cause on January 16, 1957. This court was then still unadvised of that which Irving claims is now so critical as to warrant bail. When Irving's petition for rehearing was filed February 27, 1957 the attorney who briefed for Irving and earlier waived oral argument, took us to task on the matter of the receipts, despite the fact, I am presently informed, that his client knew of them in September, 1956. I am unaware of the contents of Irving's petition to the U. S. Supreme Court for certiorari to our Court from our judgment of February 12, 1957, but I think this "newly discovered evidence" was commencing to become a little stale along about that time.

I would underscore White's statement of the September, 1956 date because it corroborates Irving and for the purposes of the instant motion satisfies me that Irving possessed the information in September. Nothing in the papers before me, at this time, shows that Irving withheld the information from his counsel or a date when the receipts were handed over, if they were. What has been thus traced spells out inexcusable silence and delay.

Although Irving's present attorneys have left unmentioned Ward v. United States, 1956, 76 S.Ct. 1063, 1 L.Ed.2d 25, and United States v. Allied Stevedoring Corporation, 2 Cir., 1956, 235 F.2d 909, I have considered them in reaching my ruling here based upon the controlling force of Rule 46(a) (2), Federal Rules of Criminal Procedure, 18 U.S.C.

"Bail may be allowed pending appeal * * * unless it appears that

the appeal is frivolous or taken for delay * * *."

That part of the Rule following the word "unless", I think, confers discretion upon a judge of this court.

The emergency motion for bail pending appeal is hereby denied.