**UNITED STATES of America,**
**Plaintiff,**

v.

**Wilton ESTERS, Defendant.**

**Crim. No. 4349.**

United States District Court
W. D. Arkansas,
Texarkana Division.

April 12, 1958.

Charles W. Atkinson, U. S. Atty., and Henry M. Britt, Asst. U. S. Atty., Ft. Smith, Ark., for plaintiff.

George F. Edwardes, Texarkana, Ark., for defendant.

LEMLEY, Chief Judge.

This cause is now before the Court upon the defendant's application for bail pending his appeal from a conviction of violating certain of the federal liquor laws, which application is resisted by the Government. The matter has been submitted to the Court upon the application aforementioned, the Government's response thereto, the motion of the defendant to strike the Government's response and for the entry of an order admitting to bail, documentary evidence introduced by the defendant, written briefs and oral argument; and in passing upon this application we, of course, consider, in addition to the foregoing, all that transpired at the trial of the principal case.

The indictment against the defendant consisted of three counts; the first charged him with selling approximately 56 gallons of whiskey in unstamped containers in the Western District of Arkansas, on or about February 22, 1956 in violation of 26 U.S.C.A. Section 5008 (b); the second charged that on or about the same time he engaged in the business of a distiller without having given the requisite bond, in violation of 26 U.S.C.A. Section 5606; and the third count charged that on or about the same time he possessed certain items of personal property, including a 1955 Willys ½ ton pick-up truck, 600 pounds of cane sugar, a sack of bran, a siphon hose, a quantity of gasoline, and seventy 1-gallon glass jugs, intended to be used in violation of the federal internal revenue laws relating to intoxicating liquor, in violation of 26 U.S.C.A. Section 5686(b).

The case was tried to a jury and was submitted on instructions to which no objections were made; the jury found the defendant guilty on the first and third counts, and not guilty on the second count. On the first count the defendant was sentenced to imprisonment for a term of three years, and on the third count imposition of sentence was suspended, and he was placed on probation for a period of five years, his probation-

ary term to commence at the expiration of the sentence imposed on the first count. Within apt time notice of appeal was filed, together with the application for bail now under consideration. In said application the defendant asserted that the appeal is being taken in good faith and not for the purpose of delay, that he is a permanent resident of LaFayette County, Arkansas, that he is able to make a good and sufficient bond, and that he will remain within the State of Arkansas at all times, holding himself amenable to the orders of the Court.

In its response, the Government alleged, among other things which we deem it unnecessary to mention, that the appeal fails to present any substantial questions of either fact or law to be resolved on the appeal, that the application for bail is without legal or factual merit, and that the Government will not delay the appeal but will expedite the same as far as possible subject only to delays beyond its control. In his motion to strike the response the defendant claims that it fails to show any cause for the denial of bail pending appeal, and that the burden of making such a showing is upon the Government, and that while the defendant is not required to state or allege any substantial questions under the existing rules of federal criminal procedure, there are, nevertheless, substantial questions involved; and it is further alleged that the defendant is moving promptly to prepare the record and submit it to the Court of Appeals.

The admission to bail of a convicted defendant pending appeal is governed by Rule 46(a) (2) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., as amended in 1956, which Rule provides that bail may be allowed pending appeal "unless it appears that the appeal is frivolous or taken for delay," and that such bail may be allowed by the trial judge, or by the court of appeals, or by any judge of the latter court, or by any circuit justice, and provides further that the order authorizing such bail may be revoked at any time by any Court, judge or justice authorized to admit to bail.

Prior to the 1956 amendment, the Rule provided that bail pending appeal should not be allowed unless it appeared that the case involved a "substantial question which should be determined by the appellate court." While there is as yet a paucity of authority construing the amended Rule, nevertheless what there is indicates that the amendment effected a liberalization in the matter of bail pending appeal, and placed upon the Government the burden of showing that such bail should not be allowed, whereas under the old rule the burden was on the appellant to show that he was entitled to bail. See Blassingame v. United States, 9 Cir., 242 F.2d 313; the opinion of Justice Frankfurter sitting as Circuit Justice[1] in Ward v. United States, 76 S.Ct. 1063, 1 L.Ed.2d 25; and the opinion of Judge Finnegan of the Court of Appeals for the Seventh Circuit in United States v. Irving, 245 F.2d 354.

In his opinion in the Ward case, supra, Justice Frankfurter pointed out that the amendment to Rule 46(a) (2) "effectuates a shift from putting the burden on the convicted defendant to establish eligibility for bail, to requiring the Government to persuade the trial judge that the minimum standards for allowing bail have not been met," and that "the granting of bail is called for more readily under the new standard than it was under the old concept of 'substantial question.'" (76 S.Ct. at page 1065, 1 L.Ed. 2d at page 27) He also said: "The Rule expresses a general attitude, the significance of which is that inasmuch as an appeal from a conviction is a matter of right, the risk of incarceration for a conviction that may be upset is normally to be guarded against by allowing bail unless the appeal is so baseless as to deserve to be condemned as 'frivolous' or is sought as a device for more delay * * *" (Ibid.) Actually, bail was denied in that case on the ground that the district judge who had first

---

1. Not a decision of the Supreme Court of the United States.

passed on the matter had determined that the appellant was a poor bail risk.

While we have not found a case in which the word "frivolous," as used in the new Rule, has been expressly defined by the court, it is to be noted that in the dissenting opinion in Hill v. United States, 101 U.S.App.D.C. 313, 248 F.2d 635, a parallel was drawn between cases involving allowance of bail pending appeal and cases involving the allowance of appeals in forma pauperis, which may not be taken if the trial judge certifies that they are not taken in good faith.[2] With respect to such an appeal it is well settled that there is an absence of good faith, from a legal standpoint, where the appeal is obviously so devoid of merit that there is no reasonable possibility of a reversal. Moreover, in Justice Harland's opinion as Circuit Justice in Roth v. United States, 77 S.Ct. 17, 1 L.Ed. 2d 34,[3] it was recognized that the granting of certiorari by the Supreme Court to review a criminal conviction might be so unlikely that the application for the writ might be regarded as frivolous and bail denied, although the Justice did not so find in that particular case. And a reading of the opinion in United States v. Irving, supra, indicates that bail was there denied on the basis that the appeal was wholly and obviously without merit.

■ Although we recognize that "the difference between the standards of the original and the new rule" has not yet ben definitely marked out by authoritative decisions,[4] we think that an appeal is "frivolous" where it presents no debatable question and where there is no reasonable possibility of a reversal. After all, according to Webster's Unabridged Dictionary, "frivolous" means "of little weight or importance, not worth notice, slight."

■ Since counsel for the defendant did not offer any objections to the instructions given to the jury and requested no additional ones, the only possible contentions that can be urged on appeal are the following: 1. That there was no substantial evidence to sustain the verdict as to counts one and three. 2. That the verdict of the jury was based upon the uncorroborated testimony of an accomplice. 3. That the verdict convicting the defendant on the first and third counts and acquitting him on the second was inconsistent. 4. That the Court erred in admitting the testimony of Lieutenant J. H. Porterfield of the Arkansas State Police to the effect that the defendant said shortly after his arrest that he guessed he would have to go down and spend some time with his brother-in-law, whom the Lieutenant identified as A. P. Powell who at the time of the defendant's arrest was serving a sentence in the Federal Correctional Institution at Texarkana, Texas, which sentence had been imposed upon him by this court for a liquor law violation.[5] When those possible contentions are considered in the light of settled rules of law and of the evidence in the case, we are convinced that they do not present any debatable question, and that there is no reasonable possibility of the defendant winning a reversal. Hence, we are satisfied that this appeal is, from a legal standpoint, frivolous or that it is taken for delay, or possibly both. Cf. United States v. Irving, supra.

2. In the Hill case the majority of the Court in a per curiam opinion denied bail.

3. Not a decision of the Supreme Court.

4. See annotation, "Right to bail before conviction or upon review thereof, under Federal Criminal Procedure Rule 46(a) (1) and (2)," 1 L.Ed.2d 1567, 1571–1572.

5. We, of course, do not know at this stage of the proceedings whether any of the first three possible contentions above outlined will be advanced in the Court of Appeals or not, but that the final one will be urged seems evident from the fact that counsel for the defendant had the Court Reporter transcribe in advance of the hearing on the pending application that portion of Lieutenant Porterfield's testimony that is in question together with the colloquy that passed between Court and counsel with regard thereto and the Court's admonition to the jury in connection therewith, presently to be mentioned, and introduced such partial transcript in evidence at the hearing.

Sheriff W. H. Baker of LaFayette County and Lieutenant Porterfield testified that on Februray 22, 1956 they, along with certain other officers, observed a whiskey still in operation on property near the line between Hempstead and LaFayette Counties, which property had formerly been owned by the defendant's father-in-law, one Powell, the father of the A. P. Powell who has been mentioned, and which at the time was owned by the defendant and his wife, or by the wife; that the still was fueled by means of gasoline, and that two unidentified men were operating it; that they watched the operation throughout the afternoon of the 22nd and then left; that they returned later, without the other officers, and remained all night; that early in the morning of February 23 before daylight a GMC pick-up truck, containing two men, was driven up to the still site and was there loaded with a quantity of whiskey; that as the truck commenced to leave the site, it was halted by Lieutenant Porterfield, at which time it was being driven by one Clarence Robinson who was immediately arrested; that as Sheriff Baker undertook to approach the vehicle from the place where he had been in hiding, he became entangled in a fence, and that the other man in the truck managed to take advantage of the situation and escape.

The officers examined the truck and found it to contain 56 gallons of moonshine whiskey, the containers thereof not having affixed thereto any internal revenue stamps denoting the payment of the tax thereon. While they were talking to Robinson, the defendant drove up in his Willys pick-up truck and was taken into custody by the officers; at the time of his arrest he was armed with a pistol, which fact he disclosed to the officers and surrendered his weapon. His vehicle contained the personal property heretofore described, which property, the evidence showed, was adapted to the manufacture and transportation of illicit liquor.

The defendant was questioned by the officers as to why he was engaged "in this business," and he replied in substance that he had been in poor health, that he was troubled by doctors' bills, and that there "was only one thing he hated, he said he had a son that he hated to have * * * learn and know about this, him being engaged in this business." It was at that time that he also stated: "I guess I will have to go down and spend some time with my brother-in-law."

Clarence Robinson, called as a witness for the Government, testified unequivocally that he had purchased the 56 gallons of whiskey found in his truck from the defendant, agreeing to pay him $5 per gallon therefor, and that prior to his going to the still to pick up the whiskey he had stopped by the defendant's house and had had a conversation with him with regard thereto. Robinson also testified that he had been charged with the possession or transportation of the whiskey that he had purchased, that he had pleaded guilty to the charge and had taken full responsibility for it without implicating the defendant, but that when the Government charged him with the tax on the liquor and the defendant had refused to pay such tax, he had decided to reveal the facts.

▆ That the testimony above abstracted constituted substantial evidence to sustain the verdict of the jury there can be no question. Even if it be granted that Robinson was an accessory to the sale of the 56 gallons of liquor, the rule in the federal courts is that a conviction may be had on the uncorroborated testimony of an accomplice if the same is believed by the jury. Harrington v. United States, 8 Cir., 267 F. 97; Greenberg v. United States, 8 Cir., 297 F. 45; Henderson v. United States, 8 Cir., 20 F. 2d 90; Kempe v. United States, 8 Cir., 151 F.2d 680; Brickley v. United States, 8 Cir., 123 F.2d 341; Nilva v. United States, 8 Cir., 212 F.2d 115, certiorari denied 348 U.S. 825, 75 S.Ct. 40, 99 L. Ed. 650; Haakinson v. United States, 8 Cir., 238 F.2d 775.

▆ It is true that the Court did not give a cautionary instruction that it sometimes gives as to the reception of and conviction upon the uncorroborated

testimony of an accomplice, but there were two reasons why such instruction was not given. In the first place, it was not requested, and it is well settled that a failure to give such an instruction is not error in the absence of a request. Greenberg v. United States, supra; Perez v. United States, 9 Cir., 10 F.2d 352; United States v. Capitol Meats, 2 Cir., 166 F.2d 537, certiorari denied 334 U.S. 812, 68 S.Ct. 1018, 92 L.Ed. 1743; Papadakis v. United States, 9 Cir., 208 F.2d 945. Moreover, it has been held that even where such an instruction is requested, the granting or withholding of it is a matter within the discretion of the trial court. Papadakis v. United States, supra; United States v. Dewinsky, D.C. N.J., 41 F.Supp. 149. Aside from that, however, the instruction would have probably been given had it not been for the fact that we considered that the testimony of Robinson was corroborated by the admission of the defendant to the officers that he was engaged in the illicit liquor business, and, to some extent at least, by the physical facts and circumstances shown in evidence, namely that an illicit still was in operation on premises recently acquired by the defendant and his wife from his father-in-law, that he approached the still in his truck before daybreak, and that said truck was loaded with supplies, particularly the sugar, the bottles, and the siphon hose, adapted and indeed indispensable to the manufacture and transportation of untaxpaid whiskey.

It is also true that the defendant testified that he had nothing to do with the still and denied that he had sold the whiskey to Robinson. In that connection he claimed that he and his wife had recently purchased the property from his father-in-law, that they were engaged in moving from their former home a few miles away to this property, that this was his first load in the moving process, that when he reached the house on the land, he saw lights down by what later turned out to be the still site, and that he drove down there to investigate. He was corroborated to some extent by his wife who testified as to the purchase of the property and the commencement of the moving, and who denied that Robinson had called at their home in the early hours of February 23, as he had testified that he had.

But the defendant and his wife were interested witnesses, and the question of their credibility and of the weight to be given to their testimony was for the jury. It is noteworthy that the defendant did not deny the testimony of the officers as to his statements at the time of his arrest, and the jury might well have thought it strange that the moving from one home to another was commenced before daybreak and with a load that did not contain one item of clothing, household furniture, or cooking utensils, and which consisted solely of items commonly used in the illegal liquor business, including 600 pounds of sugar.

■ The possible contention that the verdict of the jury convicting the defendant of selling untaxed whiskey and possessing property intended for use in violating the liquor laws, while at the same time acquitting him of engaging in the business of a distiller without giving bond, is inconsistent is even more insubstantial. In the first place, the verdict is not necessarily inconsistent. Selling whiskey and possessing property with intent that the same be used in violation of the revenue laws are matters entirely separate and distinct from the offense of actually engaging in the business of a distiller, and, as indicated, there was ample evidence to convict the defendant of the two offenses first mentioned. But even if it be assumed that the verdict was inconsistent, that would afford no ground for reversal. The same argument was made in Pilgreen v. United States, 8 Cir., 157 F.2d 427, which case, incidentally, likewise had its origin in this Court. There, the defendant was convicted of possessing a still and making mash, but was acquitted on the charge of engaging in the business of a distiller without giving bond; the same evidence was relied upon by the Government to sustain all three counts. In rejecting the argument that the verdict was inconsistent the Court said: " * * * Consistency in the verdict of

a jury is not necessary. Where different offenses are separately charged in the counts of a single indictment and the same evidence is offered in support of each, an acquittal on one count cannot be pleaded as res judicata of the others." 157 F.2d at page 428.

■ There remains to be considered the question of whether or not the Court erred in admitting the testimony of Lieutenant Porterfield to the effect that the defendant had said that he guessed he would have to spend some time with his brother-in-law, and then in permitting the Lieutenant to state that the brother-in-law was A. P. Powell, and that the latter was at the time confined in the Federal Correctional Institution at Texarkana under sentence of this Court as a liquor law violator. The admission of this testimony was objected to on the grounds that the fact that A. P. Powell was in the penitentiary for violating the liquor laws would not be any evidence of the guilt of the defendant under the instant indictment, and that the admission of that testimony was prejudicial to the defendant.

We certainly agree with counsel that the fact that A. P. Powell was in the penitentiary would not be any evidence of the guilt of the defendant here, and we so instructed the jury. The testimony was admitted solely as evidence of an admission on the part of the defendant himself that he had been caught violating the liquor laws, and that he would have to serve time just as his brother-in-law was doing, and we think it clearly admissible for that purpose, and the jury was instructed to consider it for no other.

Had the defendant stated to the officers in express terms that he had been caught violating the law and knew that he would have to serve time in the penitentiary,[6] such statement would have been clearly admissible, and we do not think the result is changed by the fact

that he put the matter in somewhat more indirect terms by referring to his brother-in-law's punishment, and his own expectation of joining him in his confinement.

In that connection counsel for the Government has cited us to Reed v. State, 102 Ark. 525, 145 S.W. 206, 208, in which case the defendant while in jail awaiting trial on a charge of murder said that he "was going to play crazy and try to get bond." His defense at the trial was insanity, and his statement above mentioned was admitted in evidence; in holding that it was admissible the Court said: "Statements or declarations by the accused before and after the commission of a crime, although not amounting to a confession, but from which, in connection with other evidence of surrounding circumstances, an inference of guilt might be drawn, are admissible against the defendant as admissions." 102 Ark. at page 530, 145 S.W. at page 208. We are also cited to Shands v. State, 118 Ark. 460, 177 S.W. 18, in which the defendant admitted to the arresting officers that "he was up against it and might as well go ahead and take his medicine." In stating the case the late Justice Frank G. Smith said: " * * * it is not shown in what respect this evidence was incompetent. There is no intimation that the statement was not freely and voluntarily made, and its relevancy is, of course, apparent." 118 Ark. at page 462, 177 S.W. at page 19. It is noteworthy that the able Justice just mentioned felt that the admissibility of the statement was so obvious that he did not include a discussion of it in the opinion proper, but disposed of the matter in the statement of the case.

■ Counsel for the defendant has called our attention to the opinion of Justice Douglas, sitting as Circuit Justice, in Herzog v. United States, 75 S.Ct. 349, 351, 99 L.Ed. 1299,[7] in which he stated in connection with an application

6. The defendant testified on direct examination that he had pleaded guilty in this Court some years ago to an indictment charging liquor law violations, and that he had been placed on probation; hence,

his anticipation of a penitentiary sentence as a result of being caught in the instant violations was well founded.
7. Likewise not an opinion of the Supreme Court.

for bail that a substantial question is presented where "there is a school of thought, a philosophical view, a technical argument, an analogy, an appeal to precedent or to reason commanding respect that might possibly prevail," and that substantiality is indicated by the fact that one judge would be likely to see merit in the contention. Here, however, we know of no school of thought or philosophical view that would aid the defendant, nor do we know of any technical argument, analogy, or appeal to precedent or reason that could plausibly be made to show error in this case. It must be remembered that the presumption of innocence no longer attends this defendant; on the contrary, the presumption is that the proceedings were regular, the evidence sufficient, and the trial free from error. As we stated in the course of the hearing on the defendant's application, we heard the evidence in the case and it convinced us beyond a reasonable doubt of his guilt, and we are likewise convinced to a moral and legal certainty that he received a fair trial and that no error was committed in the course thereof. Certain other cases cited by the defendant have been examined by us and found not to be in point.

Let an order denying the application be entered.