**UNITED STATES of America, Plaintiff,**

v.

**Olin AUSTIN, Defendant.**

**No. CR 84–151–01.**

United States District Court,
D. New Mexico.

Aug. 19, 1985.

Richard J. Smith, Asst. U.S. Atty., Albuquerque, N.M., for the U.S.

James Brandenburg, Albuquerque, N.M., for defendant.

## MEMORANDUM OPINION

BALDOCK, District Judge.

THIS MATTER comes on for consideration of defendant Austin's motion for release pending appeal pursuant to the standards announced by the Tenth Circuit[1] after Austin's initial motion had been denied.[2] Austin was convicted by a jury of conspiracy to distribute marijuana in excess of 1000 pounds.[3]

### I. Facts.

The trial evidence reflected that early on March 28, 1983, a DC–6 aircraft carrying some 409 bales of marijuana weighing 18,-580 pounds landed on Austin's 10,640 acre ranch in Torrance County, New Mexico. The plane landed on a cow pasture lit by flares attached to rebar. A ground crew loaded the bales of marijuana into a tractor-trailer rig before being apprehended by police.

Briefly, the evidence at trial indicated that once before, in February 1983, a DC–6 with a cargo of some 14–15,000 pounds of marijuana had landed on Austin's ranch. That time, however, the marijuana successfully was unloaded, transported and distributed. Austin took pictures of the tracks left by the airplane and of the tractor-trailer rig used in the operation just in case something came up.

Austin's involvement in these circumstances began the day after Thanksgiving in November of 1982 when three men, Jerry Busher, C.B. Hill and Ray Valdez, viewed the Austin Ranch ostensibly to purchase it. Hill claimed to represent five buyers from Honduras who wanted the ranch in the event the Honduran government was overthrown. Austin got the impression that the purchasers would use the ranch not only for raising cattle but also for farming alfalfa and corn. The three men looked at the ranch for four or five hours.

The next day, Austin and Hill reached an agreement for the sale of the ranch for $1.5 million. Austin would retain possession until his cattle could be sold or moved. Hill told Austin that Austin's son, who was caring for the cattle, would have to go to town once in a while at night, whenever he was told. This was unacceptable to Austin, as it was calf season, so Hill agreed to purchase all 350 head of cattle for $156,000 and pay the son $1,200 a month for his services.

Austin sought no financial or background information concerning the purchasers but did want the terms of the transaction copied down so he would have some sort of record. Hill wrote down the terms on a yellow piece of paper on Austin's kitchen table. Not until receiving all of an $800,000 down payment did Austin plan to execute any deeds, notes and mortgages.

Austin received a phone call from Hill in Miami a few days later. Hill wanted to substitute Valdez in his place as purchaser of the ranch and wondered whether Austin would agree to the substitution. Providing the terms of the ranch and livestock sale

---

1. *United States v. Affleck,* 765 F.2d 944 (10th Cir.1985) (en banc).

2. *United States v. Austin,* CR 84–151 (D.N.M. Feb. 19, 1985), *partially remanded,* 768 F.2d 302 (10th Cir.1985).

3. 21 U.S.C. § 841(a)(1), former 21 U.S.C. § 846(b)(6) [Pub.L. No. 96–359, § 8(c), 94 Stat. 1194 (1980), repealed by Pub.L. No. 98–473, § 502, 98 Stat. 2069 (1984)] and 21 U.S.C. § 846. Austin was acquitted of two counts of possession with intent to distribute marijuana in excess of 1000 pounds. 21 U.S.C. § 841(a)(1), former 21 U.S.C. § 841(b)(6) and 18 U.S.C. § 2.

were the same, Austin agreed. Austin received $67,000 [4] in cash in December, 1982, from Valdez toward the purchase. Austin offered a receipt for the cash but Valdez refused.

In the first part of March, 1983, Austin received another $40,000 payment from Valdez. He confronted Valdez about the suspicious airplane tracks on the ranch and threatened to call the law. Austin never saw Valdez again. Austin figured that something illegal was occurring on the ranch, yet he took the $40,000 anyway. Austin maintained that he was taken in by the members of the conspiracy and, had he known their true activities, would never have become involved. Once he became involved, however, he was afraid to tell anyone.

After conviction, Austin was sentenced to fifteen years of imprisonment and his initial motion for release pending appeal was denied for want of an appeal that raised a "substantial question of law or fact likely to result in reversal or an order for a new trial." [5] Subsequently, the Tenth Circuit considered defendant's renewed application for bail pending appeal.[6] In the interest of justice, a divided panel partially remanded the case to this court for reconsideration of Austin's application for release pending appeal under the standards announced in *United States v. Affleck.*[7]

In this opinion, I discuss the four written standards for bail pending appeal since 1891, including the present standard as interpreted by the various circuits. Then I apply the new standard to this case.

## II. Historical Standard for Bail Pending Appeal

Unlike bail prior to trial,[8] there is no common law,[9] constitutional[10] or statu-

---

4. The testimony on the amount conflicts. Mr. Atwood, Austin's banker, thought Austin brought $100,000 in cash to the bank then requested a cashier's check to make his $67,000 annual mortgage payment to Traveler's Insurance Co.

5. 18 U.S.C. § 3143(b)(2), Pub.L. No. 98–473, § 203, 98 Stat. 1981–82; *see* note 11, *infra.*

6. Pursuant to Fed.R.App.P. 9(b).

7. *See* note 1, 2, *supra.*

8. At early common law, a person who had been arrested would usually be repleviable not "due to any love of an abstract liberty," but because imprisonment was costly and troublesome and the chance of escape great. F. Pollock & F. Maitland, 2 History of English Law 582 (1895). Prior to the thirteenth century, the surety would be required to surrender himself if the accused failed to appear. S. Holdsworth, 4 History of the English Law 525 (3d ed. reprint 1966); *see also* O. Holmes, Jr., The Common Law 249–50 (1949). By the thirteenth century, a surety would be liable only for a money penalty if the accused failed to appear. *Id.* As the law developed, the surety would be required to pay a sum certain if the accused did not appear and might even be responsible for the custody of the accused. *Id.* All felonies were bailable until certain exceptions were made by statute in 1275. W. Blackstone, Commentaries on the Laws of England 295–297 (1769); Pollock & Maitland at 582–83; Statute of Westminster I, 1275, 3 Edw. 1 ch. 15. The statute of 1275 as well as a statute in 1554 setting forth the procedure by which bail could be obtained remained the basis of the

law until 1826. Holdsworth at 528; An Act Touching Bailment of Persons, 1554, 1 & 2 Phil. & M., ch. 13. In 1689, a limitation on excessive bail was enacted. Act of 1689, 2 W. & M. ch. 2, §§ 1(10) & 2(10).

In the United States, the Judiciary Act of 1789 provided that bail was to be admitted upon all arrests in non-capital cases; in capital cases bail was discretionary. Act, § 33(b), 1 Stat. 91 (1789). The eighth amendment which provides that "excessive bail shall not be required" was proposed in 1789 and ratified two years later in 1791. U.S. Const., amend. VIII. The eighth amendment did not create a right to bail before trial. *Carlson v. Landon,* 342 U.S. 524, 545–46, 72 S.Ct. 525, 536–37, 96 L.Ed. 547 (1952). Such a right would be statutory. *See Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 1 (1952). Release pending trial is now in accordance with 18 U.S.C. §§ 3141 & 3142. [Pub.L. No. 98–473, § 203(a), 98 Stat. 1976–1980].

9. There was no right to be admitted to bail pending review of a conviction at common law, though the court might in its discretion allow bail for probable error below. *Rex v. Wilkes,* 98 Eng.Rep. 327, 333–34 (1770). G. Longsdorf, The Beginnings and Background of Federal Criminal Procedure in W. Barron, 4 Fed. Practice & Procedure 79–82 (1951); *see also Ex parte Exell,* 40 Tex. 451, 19 Am.Rep. 32 (1874); *People v. Van Horne,* 8 Barb. (N.Y.) 188 (1850).

10. *Harris v. United States,* 404 U.S. 1232, 92 S.Ct. 10, 30 L.Ed.2d 25 (Douglas, Circuit Justice, 9th Cir.1971); *United States v. Affleck,* 765 F.2d at 948; *Roberson v. Conn.,* 501 F.2d 305, 308 (2d

tory[11] right to bail pending appeal. Indeed, review as of right of a federal criminal conviction is a development of the last century.[12] Since 1891, there have been four standards used in deciding whether bail pending appeal should be granted.[13] Under the standards, one of the most important factors has been the legal merit of the appeal. The standards can be viewed as the balance between two conflicting interests. On the one hand, a person who has been convicted should not be forced to undergo punishment if it is later determined that his conviction is invalid.[14] On the other, a person who is validly convicted

ought to begin serving his sentence without delay.[15] These two interests are not perfectly compatible given the inherent delay of the appeal process. In absence of a statute, the Court, ad hoc or by rule, may arrive at the balance. That is not the case where Congress has weighed conflicting policy considerations and enacted a controlling statute.

### A. First Standard 1891–1934.

From 1891 to 1934, Supreme Court Rule 36(2) contained the formal grant of power to allow bail pending appeal.[16] Justice

---

Cir.1974); *Hamilton v. N.M.*, 479 F.2d 343, 344 (10th Cir.1973) (per curiam).

**11.** Bail pending appeal is now handled in accordance with 18 U.S.C. § 3143(b) [Pub.L. No. 98–473, § 203(a), 98 Stat. 1981–82] which provides:

> (b) Release or Detention Pending Appeal by the Defendant.
> The judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
> (1) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released pursuant to section 3142(b) or (c) [title 18 U.S.C.]; and
> (2) that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or an order for a new trial.
> If the judicial officer makes such findings, he shall order the release of the person in accordance with the provisions of section 3142(b) or (c) [title 18 U.S.C.].

**12.** There is no federal constitutional right to an appeal. *Abney v. United States*, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977); *McKane v. Durston*, 153 U.S. 684, 687–88, 14 S.Ct. 913, 914–15, 38 L.Ed. 867 (1894). The right of appeal in federal criminal cases is entirely statutory. *Id.* In 1889, Congress created an appeal as of right to the Supreme Court in criminal convictions punishable by death. Act of Feb. 6, 1889, § 6, 25 Stat. 656. In 1911, Congress created a general right of appeal in criminal cases to the circuit courts of appeals. Act of March 3, 1911, § 128, 36 Stat. 1133; *Abney*, 431 U.S. 651, 656 n. 3, 97 S.Ct. 2034, 2038 n. 3, 52 L.Ed.2d 651; *see also Carroll v. United States*, 354 U.S. 394, 400 n. 9, 77 S.Ct. 1332, 1336 n. 9, 1 L.Ed.2d 1442 (1957). An appeal from a final judgment (sentence) in a federal criminal

case remains a matter of right. 28 U.S.C. §§ 1291, 1294; *Coppedge v. United States*, 369 U.S. 438, 441, 82 S.Ct. 917, 919, 8 L.Ed.2d 21 (1962).

**13.** Bail pending appeal has always been thought of differently than bail pending trial. Until conviction, a defendant is presumed innocent. U.S. Const., amend. V. Before trial, a defendant who has been released also may be more effective in assisting counsel in the preparation of a defense by gathering evidence and witnesses. *Stack v. Boyle*, 342 U.S. 1, 8, 72 S.Ct. 1, 5, 96 L.Ed. 1 (Jackson, J., concurring). After conviction and sentencing, this function largely disappears. At the same time, the presumption of innocence no longer attends to the defendant, rather, there is a presumption of guilt as charged and found by the jury. The proceedings are presumed regular, the evidence sufficient and the trial free from error. *United States v. Esters*, 161 F.Supp. 203, 210 (W.D.Ark. 1958).

**14.** *Rossi v. United States*, 11 F.2d 264, 265–66 (8th Cir.1926).

**15.** *Johnson v. United States*, 218 F.2d 578, 579 (9th Cir.1954) (Fee, J. concurring).

**16.** In addition to granting jurisdiction to review convictions in capital cases, *see* note 12, *supra*, Congress in 1891 provided for direct appeal to the Supreme Court from the existing circuit courts in cases of conviction of a capital or otherwise infamous crime. Act of March 3, 1891, § 5, 26 Stat. 827–28.

> Supreme Court Rule 36(2) provided:
> Where such writ of error is allowed in the case of a conviction of an infamous crime, or in any other criminal case ... the Circuit Court or District Court, or any Justice or Judge thereof, shall have power, after the citation is served, to admit the accused to bail in such amount as may be fixed.

Gray, in *Hudson v. Parker*,[17] announced the policy behind this rule. He wrote:

> The statutes of the United States have been framed upon the theory that a person accused of a crime shall not, until he has been finally adjudged guilty. in the court of last resort, be absolutely compelled to undergo imprisonment or punishment, but may be admitted to bail, not only after arrest and before trial, but after conviction and pending a writ of error.[18]

Most of the controversy surrounding bail pending appeal was whether bail was mandatory or discretionary under the rule.

One circuit court of appeals concluded that, absent a capital offense, bail pending appeal was mandatory if there was not a risk of flight.[19] The majority view was otherwise; bail pending appeal was a matter of judicial discretion.[20] The merit of the appeal was considered, though not always under the same rubric.[21] The general rule was that bail pending appeal would be granted in most non-capital cases unless there was a clear showing that the appeal was frivolous or taken for delay.[22] Applicants for bail were not required to show they were entitled to reversal.[23]

## B. Second Standard 1934–1956.

From 1934 to 1956, Criminal Appeals Rule VI [24] and then Rule 46(a)(2) (1946) [25]

139 U.S. 706 (1891). The rule was enacted to give effect to the Court's appellate jurisdiction and pursuant to the Court's power to make rules regulating practice. *Hudson v. Parker*, 156 U.S. 277, 284, 15 S.Ct. 450, 453, 39 L.Ed. 424 (1895). *See also In re Claasen*, 140 U.S. 200, 11 S.Ct. 735, 35 L.Ed. 409 (1891) (discussion of rule).

**17.** *Hudson*, 156 U.S. at 284–85, 15 S.Ct. at 453.

**18.** *Id.* at 285, 15 S.Ct. at 453.

**19.** *McKnight v. United States*, 113 F. 451, 453 (6th Cir.1902).

**20.** *United States v. St. Johns*, 254 F. 794 (7th Cir.1918).

**21.** *Garvey v. United States*, 292 F. 591, 593 (2d Cir.1923) (defendant must have "a reasonable chance of success upon his appeal."); *United States v. Motlow*, 10 F.2d 657, 663 (Butler, Circuit Justice, 7th Cir.1926) ("questions raised appear at least sufficiently substantial and doubtful to justify and require argument on the part of the United States.")

**22.** *Bennett v. United States*, 36 F.2d 475, 476 (5th Cir.1929).
The former Eighth Circuit, which included what is now the Tenth Circuit, concluded that bail pending appeal should be granted in the vast majority of cases and denied only in rare cases. *Rossi v. United States*, 11 F.2d 264, 265 (8th Cir.1926). The rare cases in which bail could be denied involved flight risk or a frivolous appeal taken merely for delay or a dangerous defendant. *Id.*

**23.** *United States v. Motlow*, 10 F.2d 657, 663 (Butler, Circuit Justice, 7th Cir.1926). In the absence of a transcript, Justice Butler thought it quite impossible to determine if the grounds on which review was sought were well taken; the judge hearing the application for bail was not to

pass on the merits of the case. *Id.* Cf. *United States v. Austin*, 768 F.2d 302, 303 (10th Cir., 1985) (McKay, J., dissenting); *United States v. Patterson*, 767 F.2d 711, 712 (10th Cir., 1985) (McKay, J., dissenting).

**24.** Criminal Appeals Rule VI provided:
VI. *Bail.* The defendant shall not be admitted to bail pending an appeal from a judgment of conviction save as follows: Bail may be granted by the trial judge or by the appellate court, or, where the appellate court is not in session, by any judge thereof or by the circuit justice.
Bail shall not be allowed pending appeal unless it appears that the appeal involves a substantial question which should be determined by the appellate court.
292 U.S. at 663–64 (1934).

**25.** Fed.R.Crim.P. 46(a)(2) (1946) appeared as follows:
46(a) Right to Bail
(2) *Upon Review.* Bail may be allowed pending appeal or certiorari only if it appears that the case involves a substantial question which should be determined by the appellate court. Bail may be allowed by the trial judge or by the appellate court or by any judge thereof or by the circuit justice. The court or the judge or justice allowing bail may at any time revoke the order admitting the defendant to bail.
327 U.S. 868 (1946). Rule 46(a)(2) (1946) was promulgated by the Court as part of the Federal Rules of Criminal Procedure authorized by Congress in 1940. Pub.L. No. 40–675, 54 Stat. 688. The rule was essentially a statement of existing law on the subject. Proceedings of the Institute on Federal Rules of Criminal Procedure, 5 F.R.D. 243, 246 (1945). The third sentence in the rule was new. It allowed bail to be revoked

of the Federal Rules of Criminal Procedure provided for bail pending appeal only if the appeal involved "a substantial question which should be determined by the appellate court." With the adoption of Criminal Appeals Rule VI, the standard for granting bail pending appeal was more restrictive. The appeal had to involve a substantial question, not merely one which was not frivolous, and the burden of proof was transferred from the government to the defendant to make such a showing.[26] Once a substantial question was shown to exist, bail was a matter of discretion,[27] although one court of appeals thought it a matter of right.[28] The various definitions of what constituted a substantial question from 1934 to 1956 are of current interest because the present standard in title 18 U.S.C. section 3143(b)(2) also requires a substantial question and is similarly constructed.[29] Justice Jackson as a Circuit Justice thought a "question should be substantial in the sense of fairly doubtful and in the sense that it is not trivial or merely technical but has substantial importance to the merits." [30]

Justice Douglas had two occasions as a Circuit Justice to discuss comprehensively what constituted a substantial question.[31]

In 1950, he said that a question may be substantial even though the judge hearing the application for bail would affirm on the merits.[32] A substantial question would arise if the appeal presented a question which: 1) was new and novel, or 2) was not controlled by existing precedent, or 3) involved important interpretation of Supreme Court precedent, or 4) involved application of settled law to particular facts so as to raise a fairly debatable issue.[33]

In 1955, Justice Douglas further elaborated on the substantial question standard. First, one had to consider the soundness of errors alleged, but even if the judge reviewing the bail application were unimpressed, the issue was whether "there [was] a school of thought, a philosophical view, a technical argument, an analogy, an appeal to precedent or to reason commanding respect that might possible prevail." [34] Because there is room for argument on most law and its applications, the shadow of a doubt about the conclusion would suffice for a substantial question.[35] Even if there was "no appellate judge who would likely reverse the judgment of conviction," there still might be a substantial question

at any time, and was designed to make explicit that bail pending appeal was discretionary. *Williamson v. United States*, 184 F.2d 280, 281 n. 4 and 282 n. 6 (Jackson, Circuit Justice, 2d Cir.1950).

**26.** *United States v. Delaney*, 8 F.Supp. 224, 227 (D.N.J.1934), *rev'd on other grounds*, 77 F.2d 916, 917 (3d Cir.1935); *Johnson v. United States*, 218 F.2d 578 (9th Cir.1954).

**27.** *Williamson v. United States*, 184 F.2d 280, 281 n. 4 (Jackson, Circuit Justice, 2d Cir.1956).

**28.** *Bridges v. United States*, 184 F.2d 881, 884 (9th Cir.1950). ("Where a meritorious question exists bail becomes a matter of right, not of grace.").

**29.** Criminal Appeals Rule VI and Fed.R.Crim.P. 46(a)(2) (1946), notes 24 and 25, *supra*, required an appeal that involved a "substantial question which should be determined by an appellate court." 18 U.S.C. § 3143(b)(2) requires a "substantial question of law or fact likely to result in reversal or an order for a new trial."

**30.** *Williams v. United States*, 184 F.2d 280, 281 n. 4 (Jackson, Circuit Justice, 2d Cir.1950).

**31.** The opinions of Circuit Justice Douglas remain the leading authorities on the definition of a substantial question under the second standard. An opinion of a Circuit Justice is not a Supreme Court opinion. In theory, however, the Circuit Justice acts as a surrogate for the entire court and tries to reflect the views of the entire court. *Holtzman v. Schlesinger*, 414 U.S. 1304, 1313, 94 S.Ct. 1, 7, 38 L.Ed.2d 18 (Marshall, Circuit Justice, 2d Cir.1973); R. Stern & E. Gressman, Supreme Court Practice ch. 17 (5th ed. 1978).

**32.** *D'Aquino v. United States*, 180 F.2d 271, 272 (Douglas, Circuit Justice, 9th Cir.1950).

**33.** *Id.*

**34.** *Herzog v. United States*, 75 S.Ct. 349, 351, 9 L.Ed.2d 1299, 1301 (Douglas, Circuit Justice, 9th Cir.1955).

**35.** *Id.*

that ought to be determined in the interest of judicial administration.[36]

■■■■ This broad view of what constitutes a substantial question appears to have been rejected by the drafters of the current statute.[37] Congress is presumed to know the law including the construction of previous law.[38] When Congress used the term "substantial question" in 1984, it did not modify it with the phrase "which should be determined by an appellate court."[39] Rather, Congress modified the term with the more restrictive phrase "of fact or law likely to result in reversal or an order for a new trial."[40] Thus, a mere philosophical view or an issue which might result in improved judicial administration, without more, would not constitute a substantial question under the current statute.

### C. Third Standard 1956–1984.

From 1956 to 1984, Rule 46(a)(2) (1956)[41] of the Federal Rules of Criminal Procedure and later title 18 U.S.C. section 3148,[42] provided for bail pending appeal unless it appeared that the appeal was frivolous or taken for delay. The 1956 amendment to Rule 46(a)(2) "greatly liberalized" the basis for granting bail pending appeal.[43] The new rule replaced the substantial question standard with a much lighter one—even a "thin" appeal might not be frivolous.[44] If the appeal were not frivolous or taken for

**36.** *Id.*

**37.** 18 U.S.C. § 3143(b)(2), note 11, *supra.* The Ninth Circuit in *United States v. Handy,* 761 F.2d 1279, 1281 (9th Cir.1985) is of the opinion that the views of Circuit Justice Douglas on what constituted a substantial question in 1950 and 1955 can be applied to 18 U.S.C. § 3143(b)(2). To accept this view is to disregard the complete language of the prior standard. A "substantial question which should be determined by an appellate court" allowed for far more judicial discretion than the present standard. The views of Justice Douglas were formed at a time when all doubts concerning bail pending appeal were resolved in favor of the defendant, *Herzog v. United States,* 75 S.Ct. 349, 351, 99 L.Ed. 1299, 1301 (Douglas, Circuit Justice, 9th Cir.1955), which certainly is no longer the case. *Handy,* 761 F.2d at 1284–85 (Farris, J., dissenting).

**38.** *Cannon v. Univ. of Chicago,* 441 U.S. 677, 696–699, 99 S.Ct. 1946, 1957–1958, 60 L.Ed.2d 560 (1979); *Wyoming v. United States,* 310 F.2d 566, 580 (10th Cir.1962), *cert. denied,* 372 U.S. 953, 83 S.Ct. 952, 9 L.Ed.2d 977 (1963).

**39.** *See* notes 24 & 25, *supra.*

**40.** *See* note 11, *supra.*

**41.** Fed.R.Crim.P. 46(a)(2) (1956) provided:
*Upon Review.* Bail may be allowed pending appeal or certiorari unless it appears that the appeal is frivolous or taken for delay. Pending appeal to a court of appeals, bail may be allowed by the trial judge, by the court of appeals, or by any judge thereof or by the circuit justice, to run until final termination of the proceedings in all courts. Pending appeal or certiorari to the Supreme Court, bail may be allowed by the court of appeals or by any judge thereof or by the Supreme Court or by a Justice thereof. Any Court or any judge or justice authorized to grant bail may at any time revoke the order admitting the defendant to bail.
350 U.S. 1021 (1956).

**42.** Former 18 U.S.C. § 3148 provided:
A person (1) who is charged with an offense punishable by death, or (2) who has been convicted of an offense and is either awaiting sentence or sentence review under section 3576 of this title or who has filed an appeal or a petition for a writ of certiorari, shall be treated in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. If such a risk of flight or danger is believed to exist, or if it appears that an appeal is frivolous or taken for delay, the person may be ordered detained. The provisions of section 3147 shall not apply to persons described in this section: *Provided,* That other rights to judicial review of conditions of release or orders of detention shall not be affected.
Bail Reform Act of 1966, Pub.L. No. 89–465, 80 Stat. 215–16 *amended by* Pub.L. 91–452, title X, § 1002, 84 Stat. 952 (1970).
Fed.R.Crim.P. 46 was amended in 1966, 383 U.S. 1113, and 1972, 406 U.S. 998, 92 S.Ct. 2910. The 1972 amendment eliminated any reference to bail pending appeal, which would have been handled in accordance with former 18 U.S.C. § 3148. [80 Stat. 215–16 (1965) & 84 Stat. 952 1970].

**43.** *United States v. Allied Stevedoring,* 76 S.Ct. 1068, 1 L.Ed.2d 23 (Frankfurter, Circuit Justice, 2d Cir.1956).

**44.** *Fiano v. United States,* 295 F.2d 135, 136 (9th Cir.1958) (per curiam).

delay, bail ordinarily should be granted, although discretionary factors still could be considered.[45]

An appeal was "frivolous" where it presented no debatable question and where there was no reasonable possibility of reversal, the word meaning of the little weight or importance, not worth notice, slight.[46] Under the amended rule, the government had the burden to show that bail should be denied.[47]

The adoption of the Bail Reform Act of 1966[48] made little change in the federal law of bail pending appeal, although it ex-

plicitly recognized that bail might be denied where flight risk or dangerousness of the defendant was at issue.[49] In 1972, Rule 9(c)[50] of the Federal Rules of Appellate Procedure became effective and shifted the burden of proof to the defendant on the issues of flight risk and dangerousness.[51] The government retained the burden of showing that an appeal was frivolous or taken for delay.[52] The law favored conditional release on bail pending appeal.[53]

### D. 1984 to present.

In 1984, Congress enacted the cur-

---

**45.** *Leigh v. United States,* 82 S.Ct. 994, 996, 8 L.Ed.2d 269, 271 (Warren, Circuit Justice, D.C. Cir.1962); *Ellis v. United States,* 79 S.Ct. 428, 3 L.Ed.2d 565 (Warren, Circuit Justice, D.C.Cir. 1959); *United States v. Galante,* 308 F.2d 63, 64 (2d Cir.1962); *Carbo v. United States,* 302 F.2d 456, 457 (9th Cir.1962); *United States v. Allied Stevedoring,* 235 F.2d 909, 910 (2d Cir.1955).

**46.** *United States v. Piper,* 227 F.Supp. 735, 740 (N.D.Tex.1964); *United States v. Esters,* 161 F.Supp. 203, 206 (W.D.Ark.1958).

**47.** *Binion v. United States,* 352 U.S. 1028, 1029, 77 S.Ct. 642, 642, 1 L.Ed.2d 591 (1957) (per curiam); *Ward v. United States,* 76 S.Ct. 1063, 1065, 1 L.Ed.2d 25, 27 (Frankfurter, Circuit Justice, 2d Cir.1956); *Rhodes v. United States,* 275 F.2d 78, 80 (4th Cir.1960).

**48.** The Bail Reform Act of 1966, Pub.L. No. 84–465, 80 Stat. 215, was enacted in part "to assure that all persons, regardless of their financial status, shall not needlessly be detained ... pending appeal when detention serves neither the ends of justice nor the public interest." H.Rep. No. 1541, 89th Cong.2d Sess., *reprinted in* 1966–2 U.S.Code Cong. & Admin.News 2293, 2295.

**49.** *See* S.Rep. No. 750, 89th Cong.2d Sess., *reprinted in* 1966–2 U.S.Code Cong. & Admin. News 2305 (sectional analysis).

**50.** Fed.R.App.P. 9(b) provides:
 9(b) *Release pending appeal from a judgment of conviction.*—Application for release after a judgment of conviction shall be made in the first instance in the district court. If the district court refuses release pending appeal, or imposes conditions of release, the court shall state in writing the reasons for the action taken. Thereafter, if an appeal is pending, a motion for release, or for modification of the conditions of release, pending review

may be made to the court of appeals or to a judge thereof. The motion shall be determined promptly upon such papers, affidavits, and portions of the record as the parties shall present and after reasonable notice to the appellee. The court of appeals or a judge thereof may order the release of the appellant pending disposition of the motion.
389 U.S. 1077, 88 S.Ct. 2340 (1968).
Fed.R.App.P. 9(c) provided:
 (c) *Criteria for release.*—The decision as to release pending appeal shall be made in accordance with Title 18, U.S.C. § 3148. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.
406 U.S. 1007, 92 S.Ct. 2895 (1971).

**51.** *United States v. Provenzano,* 605 F.2d 85 (3d Cir.1979); *United States v. Horvath,* 575 F.Supp. 516 (D.Minn.1983).

**52.** Advisory Committee Note to Fed.R.App.P. 9(c), 56 F.R.D. 182 (1972). For a rare example of a federal appellate court finding an appeal frivolous, *see United States v. Caron,* 615 F.2d 920, 922 (1st Cir.1980).

**53.** *See, e.g., Banko v. United States,* 414 F.2d 1150, 1153 (D.C.Cir.1969) (per curiam). Bail could be denied if the appeal were frivolous or taken for delay, no one or more conditions of release would reasonably protect against flight risk, or if there were reason to believe that defendant posed a threat to any other person or the community. *Leary v. United States,* 431 F.2d 85, 88 (5th Cir.1970). *See also United States v. Milhim,* 702 F.2d 522, 526 (5th Cir. 1983) (denial of bail pending appeal proper where defendant violated pre-trial conditions of release and committed series of assaults); *United States v. Anderson,* 670 F.2d 328, 330 (D.C. Cir.1982) (denial of bail pending appeal proper where past conduct of defendant indicates that he would possess, control or distribute controlled substances).

rent title 18, U.S.C. section 3143(b)[54] which now, together with Rule 9(c) of the Federal Rules of Appellate Procedure,[55] provides the standard for release pending appeal. First, by clear and convincing evidence a defendant must show that he is not likely to flee or pose a danger to the safety of any other person or the community it released.[56] Second, by a preponderance of the evidence,[57] he must show that his "appeal is not for purpose of delay and it raises a substantial question of law or fact likely to result in reversal or an order for a new trial."[58]

The second requirement has been interpreted to mean that the appeal must raise a substantial question which, if resolved in defendant's favor on appeal, would result in a reversal or a new trial of all counts on which imprisonment was imposed.[59] The

term "substantial" defines the level of merit of the question while the phrase "likely to result in reversal or an order for a new trial" defines the type of question raised.[60]

■ A substantial question "is a 'close' question or one that could very well be decided the other way."[61] A substantial question has more merit than a question which is merely not frivolous.[62] These are only general guidelines; what constitutes a substantial question is determined on an ad hoc basis.[63]

■ A question may be substantial, however, but have little effect on the outcome of the appeal because the error alleged was waived below or constitutes harmless error.[64] Accordingly, the substantial question must be "so integral to the merits of the conviction on which defendant is to be

**54.** *See* note 11, *supra*.

**55.** Fed.R.App.P. 9(c) now provides:

 (c) *Criteria for Release.* The decision as to release pending appeal shall be made in accordance with Title 18, U.S.C. § 3143. The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community and that the appeal is not for purpose of delay and raises a substantial question of law or fact likely to result in reversal or in an order for a new trial rests with the defendant.

Pub.L. No. 98–473, § 210, 98 Stat. 1987 (1984). If the district court refuses release pending appeal or imposes conditions of release, there must be a statement of written reasons, and the defendant can seek review in the court of appeals or a judge thereof. Fed.R.App.P. 9(b). The motion is determined on such papers, affidavits and portions of the record as the parties present and without full briefing. Fed.R.App.P. 9(b); *United States v. Perdomo,* 765 F.2d 942, 943 (9th Cir.1985).

**56.** 18 U.S.C. § 3143(b)(1).

**57.** *United States v. Affleck,* 765 F.2d at 953 n. 15.

**58.** 18 U.S.C. § 3143(b)(2).

**59.** *Affleck,* 765 F.2d at 953. Originating in the Third Circuit, this interpretation of the statute has been endorsed by several circuits. *United States v. Randell,* 761 F.2d 122, 123, 125 (2d Cir.1985); *United States v. Handy,* 761 F.2d 1279, 1283 (9th Cir.1985); *United States v. Powell,* 761 F.2d 1227, 1233–34 (8th Cir.1985); *United States v. Valero-Elizondo,* 761 F.2d 1020, 1023–24 (5th Cir.1985); *United States v. Giancola,* 754 F.2d 898, 901 (11th Cir.1985); *United*

*States v. Miller,* 753 F.2d 19, 24 (3d Cir.1985). The Seventh Circuit has not found it necessary to adopt this interpretation of the statute. *United States v. Giangrosso,* 763 F.2d 849, 850–51 (7th Cir.1985); *United States v. Molt,* 758 F.2d 1198, 1199–1200 (7th Cir.1985).

**60.** *Handy,* 761 F.2d at 1280.

**61.** *Giancola,* 754 F.2d at 901 (quoted in *Affleck,* 765 F.2d at 952).

In the first appellate decision interpreting 18 U.S.C. § 3143(b)(2), the Third Circuit defined a substantial question as "one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." *Miller,* 753 F.2d at 23. The Eleventh Circuit recognized the limitations of such a definition; a question may be without controlling precedent because it is so obviously without merit as not to require reported discussion. *Giancola,* 754 F.2d at 901. Likewise, a question, though unresolved in the controlling circuit, may have been resolved unanimously in other circuits, and there may be no reason to believe the controlling circuit would reach a different result. *Id.* A question which is just "fairly debatable" may or may not be substantial depending on the circuit. *Compare Powell,* 761 F.2d at 1232 (8th Cir.) (fairly debatable question is not substantial) *with Handy,* 761 F.2d at 1281 (fairly debatable question is substantial).

**62.** *Id.*

**63.** *Affleck,* 765 F.2d at 952.

**64.** *Id.* (relying on *Miller,* 753 F.2d at 23).

imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." [65]

 That the statute requiring "a substantial question likely to result in reversal" has not been given its ordinary meaning has not gone unnoticed.[66] There are several reasons suggested for this departure, but the starting point seems to be a resort to legislative history indicating that Congress did not intend to eliminate bail pending appeal, rather, it only intended to eliminate any presumption in favor of bail pending appeal.[67] Interpreting a clear statute based on an arguably inconsistent portion of legislative history does not seem justified.[68]

**65.** *Affleck,* 765 F.2d at 952 (quoting *Miller,* 753 F.2d at 23).

**66.** *Powell,* 761 F.2d at 1233. The general rules of construction are that words of a statute should be given their ordinary, everyday meaning, and in the absence of a clearly expressed legislative intention to the contrary, the language of the statute is conclusive. *Escondido Mut. Water Co. v. La Jolla, Rincon, San Pasqual & Pala Bands of Mission Indians,* 466 U.S. 765, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1985); *North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979); *Paluso v. Mathews,* 573 F.2d 4, 9 (10th Cir.1978).

**67.** *Miller,* 753 F.2d at 22–23; *Powell,* 761 F.2d at 1232. *See* Sen.Rep. No. 98–225, 98th Cong., 1st Sess. 26, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3209.

**68.** Where a statute is unambiguous, resort to legislative history normally is unwarranted. *Ex parte Collett,* 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949); *United States v. Richards,* 583 F.2d 491, 495 (10th Cir.1978); *but see Hunt v. Nuclear Regulatory Comm'n,* 611 F.2d 332, 336 (10th Cir.1979), *cert. denied,* 445 U.S. 906, 100 S.Ct. 1084, 63 L.Ed.2d 322 (1980) (reference to legislative history appropriate no matter how clear the statute). The meaning of a clear statute ordinarily is conclusive. *United States v. Clark,* 454 U.S. 555, 560, 102 S.Ct. 805, 809, 70 L.Ed.2d 768 (1982); *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1980) (When the statute is unambiguous, the judicial inquiry is complete except in rare and exceptional circumstances.). If relevant at all, legislative history should be used to resolve ambiguity, not create it. *United States v. Mo. Pa. R.R. Co.,* 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929); *United States v. Rone,* 598 F.2d 564, 569 (9th Cir.1979), *cert. denied,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980). Merely because a statute may be harsh does not mean it is ambiguous. *United States v. Second Nat'l Bank of N. Miami,* 502 F.2d 535, 540 (5th Cir.1974).

Reliance on legislative history to justify the current interpretation of 18 U.S.C. § 3143(b)(2) is not well placed, however. Rather, the brief legislative history supports a plain and ordinary meaning of the provision. There is not a hint that Congress meant anything other than what was enacted. The Senate Committee sought to eliminate a presumption in favor of bail pending appeal. S.Rep. No. 98–225, 98th Cong. 1st Sess. 26, *reprinted in* 1984–4 U.S.Code Cong. & Admin.News 3209. The Committee justified eliminating the presumption by saying that a conviction is presumed to be correct in law and bail pending appeal may undermine the deterrent effect of the criminal law. *Id.* In contrast to the finding that an appeal was frivolous or taken for delay, the new provision "required an affirmative finding that the chance for reversal is substantial." *Id.* at 3210. The Committee did not deviate from the words of the statute in further explaining the provision. There being no "clearly expressed legislative intention to the contrary," note 66, *supra,* the language of the statute is conclusive as to its meaning.

There is an identical provision for bail pending appeal in the District of Columbia. D.C.Code Ann. § 23–1325(c) (1981) [Pub.L. No. 91–358, § 210, 84 Stat. 648 (1970)]. A reported discussion on the "substantial question likely to result in reversal" standard does not seem to occur, although the standard has been recited without mention of the current interpretation. *United States v. Edwards,* 430 A.2d 1321, 1340 n. 44 (D.C.Ct.App.1981); *Villines v. United States,* 312 A.2d 304, 306 (D.C.Ct.App.1973); *Johnson v. United States,* 291 A.2d 697, 698 (D.C.Ct.App. 1972). There is slight mention of the provision in other contexts. *United States v. Sarvis,* 523 F.2d 1177, 1182 n. 2 (D.C.Cir.1975); *United States v. Brown,* 483 F.2d 1314, 1315 n. 4, 1318–19 (D.C.Cir.1973); *United States v. Jones,* 476 F.2d 883, 884, 886–87 (D.C.Cir., 1972) (Bazelon, J., dissenting); *United States v. Stanley,* 469 F.2d 576, 579 n. 7 (D.C.Cir.1972); *United States v. Thompson,* 452 F.2d 1333, 1335 n. 4 (D.C.Cir. 1971), *cert. denied,* 405 U.S. 998, 92 S.Ct. 1251, 31 L.Ed.2d 467 (1972).

The legislative history of the 1970 D.C. provision includes the statement:

> [O]nce a person has been convicted and sentenced to jail, there is absolutely no reason for the law to favor release pending appeal or

Another reason for the current interpretation is that giving "a substantial question likely to result in reversal" its ordinary meaning would render the word "substantial" surplusage because any question likely to result in reversal must be substantial by definition.[69] The very same objection could have been made about the second standard for bail pending appeal,[70] in effect from 1934–1956, which required the defendant present "a substantial question which should be determined by an appellate court." The argument would be that any question which should be determined by an appellate court is necessarily substantial.

■ The general rule is that a statute should be construed so that no word is superfluous, void or insignificant.[71] In this case, the current substantial question requirement must be read against the backdrop of the former substantial question standard. In reenacting the substantial question language, Congress was aware that prior judicial construction of that language would obtain,[72] unless there was a clear indication to the contrary.[73] Congress gave that clear indication by describing a substantial question as one likely to result in reversal, not merely one that should be determined by the appellate court.

The next reason for the current interpretation of the statute is that it would be unreasonable to condition bail pending appeal on the trial judge's willingness to certify his own error.[74] If a trial judge is of the view that there is error, he may grant a post-trial motion for judgment of acquittal,[75] or a new trial.[76]

Admittedly, the instances in which a trial judge would find a substantial question likely to result in reversal under the plain meaning of the statute would be rare. But that does not mean such instances would be non-existent. There may be a serious question as to the validity of applicable controlling precedent, and the lower court judge, in the exercise of proper judicial restraint, may be unwilling to announce a change in the law even though the change appears likely, but is not certain. Or a trial judge, not having an opportunity to make a complete and detailed review of a transcript,[77] may find that a judgment is likely to be reversed, yet he may lack the desired level of certainty to grant a new trial.[78] The court of appeals may rely on the presumed "objective detachment and conscience of a district judge" to guide him in making such determinations.[79]

■ In sum, the current interpretation of title 18 U.S.C. section 3143(b)(2) departs

---

*even permit it in the absence of exceptional circumstances.* (emphasis mine) *Miller,* 753 F.2d at 22 (quoting H.Rep. No. 907, 91st Cong. 2d. Sess. 186–87 (1970) ). The plain language of the provision requiring a substantial question likely to result in reversal would seem to harmonize with the legislative mandate that bail pending appeal only be granted in exceptional circumstances. *Contra, Miller,* 753 F.2d at 22–23. The exceptional circumstances would include where the defendant is not a flight risk, not dangerous, and it is fairly certain that his conviction will be reversed. In my view, the current interpretation of the federal provision does not find its strength in the legislative history of the D.C. provision.

**69.** *Miller,* 753 F.2d at 23; *Powell,* 761 F.2d at 1233.

**70.** *See* text accompanying notes 24–40, *supra.*

**71.** *Ex parte the Public Nat'l Bank of N.Y.,* 278 U.S. 101, 104, 49 S.Ct. 43, 44, 73 L.Ed. 202 (1928); *Zimmerman v. N. American Signal Co.,* 704 F.2d 347, 353 (7th Cir.1983).

**72.** *See Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978).

**73.** *United Shoe Workers of America v. Bedell,* 506 F.2d 174 (D.C.Cir.1974).

**74.** *Miller,* 753 F.2d at 19 (quoted in *Affleck,* 765 F.2d at 953 n. 14).

**75.** Fed.R.Crim.P. 29(c).

**76.** Fed.R.Crim.P. 33; *see Giancola,* 754 F.2d at 900.

**77.** Transcripts normally are completed months after disposition of post-trial motions.

**78.** *See United States v. Powell,* 761 F.2d at 1240 (Gibson, J., dissenting).

**79.** *Id.* A judge makes similar determinations in ruling on a stay or injunction pending appeal, Fed.R.App.P. 8(a), or a preliminary injunction, Fed.R.Civ.P. 65(c) (probability of success on the merits).

from the plain and ordinary meaning of the language used by Congress.[80] The plain and ordinary meaning of the statute would not lead to absurd results nor would it thwart the obvious purpose of the statute, accordingly, a court is not free to reject that meaning.[81] A court is not free to add language to the statute making it read "a substantial question, *which if determined favorably to defendant on appeal, is* likely to result in reversal." [82] "Courts are not authorized to rewrite a statute because they might deem it susceptible to improvement." [83] As previously discussed, the statute represents a legislative policy determination, an implicit balancing of conflicting interests, and ought not to be modified by the courts.[84]

### III. Law on Bail Pending Appeal Applied

On reconsideration, Austin's motion for release pending appeal turns on whether his appeal raises a substantial question likely to result in reversal or an order for a new trial.[85] There is clear and convincing evidence that Austin is not a flight risk, and he does he not pose a danger to the safety of any other person or the community if he is released. The government concedes this.

On appeal, Austin questions the sufficiency of the evidence to support his conviction and the use of a jury instruction on deliberate ignorance.[86] While these questions are not frivolous, they are not substantial or close given well established law.

### A. Sufficiency of the Evidence.

The jury's verdict must be sustained if there is substantial evidence to support it.[87] In making this determination, the evidence and its reasonable inferences are viewed in the light most favorable to the government.[88] It is not for the court to weigh

---

**80.** *See United States v. Standard Brewery,* 251 U.S. 210, 217, 40 S.Ct. 139, 140, 64 L.Ed. 229 (1920).

**81.** *See Comm'r v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965); *Helvering v. Hammel,* 311 U.S. 504, 510–11, 61 S.Ct. 368, 371–72, 85 L.Ed. 303 (1941).

**82.** *United States v. Great N. Ry.,* 343 U.S. 562, 575, 72 S.Ct. 985, 993, 96 L.Ed. 1142 (1952) ("It is our judicial function to apply statutes on the basis of what Congress has written, not what Congress might have written.").

**83.** *Badaracco v. Comm'r,* 464 U.S. 386, 104 S.Ct. 756 at 764, 78 L.Ed.2d 549 (1984); *Sedima, S.P.R.L. v. Imrex Co.,* —— U.S. ——, 105 S.Ct. 3275, 3287, 87 L.Ed.2d 346 (1985); *Tenn. Valley Auth. v. Hill,* 437 U.S. 153, 194–95, 98 S.Ct. 2279, 2301–02, 57 L.Ed.2d 117 (1978).

**84.** *See* text accompanying notes 8–16, *supra,* and *American Tobacco Co. v. Patterson,* 456 U.S. 63, 77, 102 S.Ct. 1534, 1542, 71 L.Ed.2d 748 (1982) (It is not the Court's function to upset a provision in an act, when that provision represents the balance Congress struck between two policies.).

**85.** I apply the standards adopted by the Tenth Circuit in *Affleck,* 765 F.2d at 952–53.

**86.** Instr. No. 12 provided:

The element of knowledge may be satisfied by inferences drawn from proof that a defendant closed his eyes to what would otherwise have been obvious to him. A finding beyond reasonable doubt of a conscious purpose to avoid enlightenment would permit an inference of knowledge. Stated another way, a defendant's knowledge of a fact may be inferred from willful blindness to the existence of the fact. Thus, knowledge is established if a defendant is aware of a high probability of the existence of an unlawful activity, unless he actually believes such activity does not exist.

It is entirely up to you as to whether you find any deliberate closing of the eyes, and the inference to be drawn from any such evidence. A showing of negligence or mistake is not sufficient to support a finding of willfulness or knowledge.

*See* E. Devitt & C. Blackmar, 1 Federal Jury Practice and Instructions § 1409 (3d ed. 1977 & 1985 Supp.).

**87.** *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

**88.** *Burks v. United States,* 437 U.S. 1, 16–17, 98 S.Ct. 2141, 2149–2150, 57 L.Ed.2d 1; *United States v. Gatewood,* 733 F.2d 1390, 1392 (10th Cir.1984).

conflicting evidence or consider the credibility of the witnesses.[89]

A conspiracy under the statute [90] is an agreement between two or more persons to violate federal narcotics laws.[91] To support a conviction of conspiracy the government must prove an agreement existed between two or more persons to violate the law and that the defendant knowingly or voluntarily joined or participated in the conspiracy.[92] There is no requirement that a defendant know all of the details of the conspiracy or all the other members, it is sufficient that he is aware of the general scope.[93] A conspiracy conviction may be sustained upon a sufficient showing of the essential nature of the plan and the defendant's connection with it.[94]

In my view, there is no substantial question that a reasonable jury could find that Austin knowingly participated in a conspiracy to distribute marijuana in excess of 1000 pounds.[95] The evidence was not required to exclude every reasonable hypothesis of innocence or negate all possibilities except guilt.[96] A rational trier of fact could find beyond a reasonable doubt that Austin knowingly participated in this conspiracy by providing a landing area and distribution point for large quantities of marijuana in exchange for $140,000 cash.

## B. Deliberate Ignorance Instruction.

In my view, there is no substantial question that, under the evidence of this case [97] and the well established law on this subject,[98] the giving of a deliberate ignorance instruction was justified. Austin claimed to be unaware of the conspiracy, yet there were ample facts to suggest deliberate ignorance.[99] Essentially, Austin's position is that a deliberate ignorance in-

---

89. *United States v. Pilling,* 721 F.2d 286, 288–89 (10th Cir.1983); *United States v. Lucero,* 601 F.2d 1147, 1150 (10th Cir.1979).

90. 21 U.S.C. § 846.

91. *United States v. Alberti,* 727 F.2d 1055, 1059–60 (11th Cir.1984); *United States v. Elledge,* 723 F.2d 864, 865 (11th Cir.1984).

92. *United States v. Vera,* 701 F.2d 1349, 1357 (5th Cir.1983); *United States v. Metropolitan Enterprises, Inc.,* 728 F.2d 444, 451 (10th Cir.1984).

93. *United States v. Behrens,* 689 F.2d 154, 160 (10th Cir.), *cert. denied,* 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982); *United States v. Johnson,* 645 F.2d 865, 868 n. 2 (10th Cir.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 329, 70 L.Ed.2d 168 (1981).

94. *Id.*

95. Viewing the entire evidence in the light most favorable to the government, Austin 1) accepted $100,000 cash in December, 1982, toward a "sale" of his ranch with absolutely no financial background information on a substitute "purchaser", 2) entered the transaction without any substative documentation, quite unlike his past recorded real estate acquisitions, 3) was notified that his son would be required to leave the ranch from time to time, 4) was aware that his son did in fact leave pursuant to this arrangement in February, 1983, 5) saw airplane tracks, a tractor-trailer rig and flares attached to rebar on his ranch, 6) took pictures of the airplane

tracks and the tractor-trailer rig in case something came up, 7) told another member of the conspiracy to remove flares as he had removed some previously, 8) accepted an additional $40,000 from the substitute "purchaser" in early March, 1983, admittedly knowing the activities on his ranch were illegal, and 8) gave inconsistent explanations to others that he was leasing his ranch or not selling it.

96. *United States v. Parnell,* 581 F.2d 1374 at 1379 (10th Cir.1978), *cert. denied,* 434 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1979); *United States v. Bell,* 678 F.2d 547, 549 (5th Cir.1982) (en banc).

97. *See* note 95, *supra.*

98. *United States v. Glick,* 710 F.2d 639, 643–44 (10th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 995, 79 L.Ed.2d 229 (1983); *Griego v. United States,* 298 F.2d 845, 849 (10th Cir.1962); *United States v. Cincotta,* 689 F.2d 238, 243–44 (1st Cir.), *cert. denied,* 459 U.S. 991, 103 S.Ct. 347, 74 L.Ed.2d 387 (1982); *United States v. Jewell,* 532 F.2d 697 (9th Cir.) (en banc), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *United States v. Restrepo-Granda,* 575 F.2d 524 (5th Cir.), *cert. denied,* 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978); *United States v. Dozier,* 522 F.2d 224, 226–27 (2d Cir.), *cert. denied,* 423 U.S. 1021, 96 S.Ct. 461, 46 L.Ed.2d 394 (1975).

99. *United States v. Murrieta-Bejarano,* 552 F.2d 1323, 1325 (9th Cir.1977).

struction is inconsistent with the knowledge requirements of conspiracy, yet there can be conscious avoidance of the knowledge of a conspiracy and the knowledge that one is participating in it.[100]

If Austin prevailed on his sufficiency of the evidence question, his conviction would be reversed. If he prevailed only on his jury instruction question, the conviction would be reversed and there would be an order for a new trial. But because neither question raised on appeal is close or could very well go the other way, Austin has not satisfied a necessary condition for release pending appeal.[101] Bail will be denied pending appeal.

An order will be entered accordingly.

---

**100.** *United States v. Nicholson,* 677 F.2d 706, 710–11 (9th Cir.1982) (conspiracy); *United States v. Rubinson,* 543 F.2d 951, 954 (2d Cir.), *cert. denied,* 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976).

**101.** The dissent in the order and judgment partially remanding this case, *United States v. Austin,* 768 F.2d 302, 303 (10th Cir.1985) (McKay, J. dissenting) would find a substantial question to the extent that the trial court may have relied on the government's proposition in its Response to Motion for Judgment of Acquittal that "a jury's determination of guilt in a conspiracy case will not be disturbed when the trial record shows slight evidence of a particular defendant's connection with a conspiracy that has already been established through independent evidence."
The slight connection rule is that "if the government proves beyond a reasonable doubt at least a slight, though willing and knowing, connection between a defendant and a conspiracy, an

appellate court will affirm the defendant's conviction for participation in that conspiracy." *United States v. Marsh,* 747 F.2d 7 at 13 (1st Cir.1984). The Tenth Circuit appears to have adopted such a rule. *United States v. Petersen,* 611 F.2d 1313, 1317 (10th Cir., 1979); *United States v. Andrews,* 585 F.2d 961, 964 (10th Cir. 1978).
Quite apart from the merits of the slight connection rule, I would respectfully hope that my three page order denying Austin's Motion for Judgment of Acquittal (transmitted April 16, 1985, as part of the record on appeal) also would be considered even in a preliminary review. The text of the order sets forth the standard relied on in denying the motion for judgment of acquittal. I did not rely on the slight connection rule (it was unnecessary—there was a substantial connection between Austin and the conspiracy); nor did I incorporate the cases relied upon by the government.